Pearson, J.
 

 The case presents this question: Is a person who “believes in the obligation of an oath on the Bible; who believes in God and Jesus Christ, and that God will punish in
 
 this
 
 world, all violators of his law, and that the sinner will inevitably be punished
 
 in this world
 
 for each and every sin committed; but there will be no punishment
 
 after
 
 death, and that in another world all will be happy and equal to the angels” — a competent witness ?'
 

 The law requires two guaranties of the truth of what a witness is about to state ; he must be in the fear of punishment by the laws of man, and he must also be in the fear of punishment by the laws of God, if' he states what is false ; in other words, there must be a temporal and also a religious sanction to his oath. In reference to the first, no question is made; but it is insisted, that the religious sanction required, is the fear of punishment in a
 
 future
 
 state of existence.
 

 This position is not sustained by the reason of the thing, for, if we divest ourselves of the prejudice growing out of preconceived opinions as to what we suppose to be the true teaching of the Bible, it is clear that, in reference to a religious sanction, there is no ground for making a distinction between the fear of punishment by the Supreme Being in this world, and
 
 *27
 
 the fear of punishment in the world to come ; both are based upon the sense of religion. If, on the one hand, it be said, that there is, in the fear of punishment in a future state of existence, an awful, undefined dread, and on the other, that from the constitution of our nature, we fear more that punishment which is near at hand, than that which is distant, the reply is, this is matter of speculation merely, and has no bearing upon the question, because the efficacy of the fear of punishment in either case, depends upon the degree of the belief as to the certainty of that punishment; so that, there can be, upon reason, no ground for making a distinction. The rule of law which requires a religious sanction, is satisfied in either case.
 

 It is true, that in the old cases it is held to be the common law, that no infidel, (in which class Jews were included,) could be sworn as a witness in the courts of England, which was a
 
 OTirisUan
 
 country; and Lord Coice gives this as his opinion, in which he says all the cases agree, and he assigns as the reason on which the law is based, “All infidels are in law
 
 per-petui inimioi ;
 
 for, between them, as with the devils, whose subjects they be, and the Christian, there is perpetual hostility.” This reason, to say the least of it, is narrow-minded, illiberal, bigotted and unsound.
 

 One excellence of the common law is, that it
 
 works itself pure,
 
 by drawing from the fountain of reason, so that if errors creep into it, upon reasons, which more enlarged views and a higher state of enlightenment, growing out of the extension of commerce and other causes, proves to be fallacious, they may be worked out by subsequent decisions. Accordingly, it is laid down by Lord IIale, notwithstanding the opinion of Coke and the old cases, to be the common law, that a Jew is a competent witness, and. may be sworn on the old Testament, and such has ever since been taken to be the law. After-wards, in the case of
 
 Omychund
 
 v.
 
 Barker,
 
 1 Atk. 19, and also in 'Willes’ Report, 538, it was decided by the Lord Chancellor, with the assistance of Chief Baron PaeKee, Chief Justice "Willes and Chief Justice Lee, that a Gen too, who was an infidel, who did not believe in either the Old or New Tes-
 
 *28
 
 lament, but “ wbo believed in a God, as the Creator of the Universe, and that be is a
 
 rewa/r'dm' of those, who do
 
 well, and an
 
 monger of those who do ill,”
 
 is, according to the common law, a competent witness, and may be sworn in that form which is the most sacred and obligatory upon his religious sense. The case does not show whether, according to the Gentoo religion, rewards and punishments are to be in this world or in the world to come. The decision was made without ascertaining how the fact was; so, it must have been considered by the Court to be immaterial; no reference is -made - to any distinction in regard to the
 
 time
 
 of punishment by any of the counsel in the long and full arguments made on both sides; nor is there any intimation or allusion to such a distinction in the opinions of Chief Baron Paeeee, Chief Justice Lee and the Lord Chancellor. The only thing, throughout the whole case, which suggests to the mind the existence of such a distinction, is an expression ascribed to Chief Justice Willes, by Atkins in his report of this case, viz., “I am clearly of .opinion, that if they (infidels) do not believe in a God, or future rewards and punishments, they ought not to be admitted as witnesses.” This expression is inconsistent with the decision of the case in which Willes and the others all fully concurred, for, there was no allegation or proof that the witness believed in
 
 futwre
 
 rewards and punishments ; so there must be a mistake. The Chief Justice either used the word
 
 “ futwre”
 
 inadvertently, and without, in his own mind, attaching any force to it, or Atkins misconceived his meaning; and yet this expression is referred to by most of the English writers who treat of evidence, and is the foundation of all the error on this subject. Some fifty years after the case was reported by Atkins, the opinion of Chief Justice Willes, drawn out at length, in his own hand-writing, was found among his manuscripts, and is reported in Willes. The words in this manuscrij)t are: “ I am clearly of opinion, that such infidels, (if such there be,) who either do not believe in a God, or if they do, do not think that he will reward or punish them
 
 in this world or m the next,
 
 cannot be witnesses in any case, or un
 
 *29
 
 der any circumstances, for this plain reason, because an oatli cannot possibly be any tie or obligation upon them.” This proves either that Atkins misapprehended the words of the Chief Justice, or that, upon reflection, he thought proper to alter the expression, so as to make it consistent wfth the decision.
 

 The great case of
 
 Omychund
 
 v.
 
 Barker,
 
 (it may well be called “ great,” for it relieved the-common law from an error, that was a reproach to it,) establishes the rule to be, that an infidel is a competent witness, provided he believes in the existence of a Supreme Being, who punishes the wicked, without reference to the
 
 time
 
 of punishment. The substance of the thing is, every
 
 oath must home a religious sanction.
 
 Such being the common law in regard to infidels, it follows,
 
 a for-tiori,
 
 that tlie same rule is applicable to a witness, who is a
 
 Ohristicm
 
 / and the fact, that this -Christian believes that the divine, punishment will be inflicted in this world, and not in the world to come is immaterial, and in no wise affects the principle of the rule. It is a mere “ difference of opinion,” as to the true teaching of the gospel. This we find is the conclusion of the Courts in most, if not all, of the States of the Union where the question has been presented for adjudication. 15 Massachusetts Rep. 177 ; 2 Cushing 104 ; 18 Johnson 98 ; 5 Mason 18 ; 2 Alabama 354 ; South Carolina Law Journal 202 ; 13 Vermont 362.
 

 It was insisted, in the argument,'that although this may have been the rule of the common law, it is changed by our statutory provisions prescribing the forms of oaths, ch, 76 Rev.' Code. ' -
 

 We think it manifest, by a perusal of the Statute, that it was not intended to alter any rule of law, but the sole object was to prescribe forms, adapted to the religious belief of the general mass of the citizens, for the sake of convenience and uniformity. Accordingly, the first section prescribes a form of oath as a general form, suited to such as hold the ordinary tenets of the Christian religion; that is, an oath, laying the hand upon “ the Holy Evangelists,” &c. The second section
 
 *30
 
 makes an exception in favor of those Christians who have conscientious scruples against taking an oath on the IToly Evangelists, and the form of oath is framed in reference to their belief, as to a “great day of judgment, when the secrets of all hearts shall be known.” The third section makes an exception in favor of those Christians who are Quakers, &e., and the form is framed in reference to their peculiar belief, “ swear not.” This satisfies the words of the Statute, and the argument that it was also intended to change the law by prohibiting any one from being sworn except in one or other of the prescribed forms, proves too much ; for, it would exclude both Jews, and infidels who believe in a God. ¥e think it indecent to suppose that the Legislature intended in an indirect and covert manner to alter a well-settled and unquestioned rule of law, and, in despite of the progress of the age, to throw the country back upon the illiberal and intolerant rule which was supposed to be the law in the time of bigotry; for, it was every day’s practice to swear Jews upon the Old Testament, and
 
 Omychund
 
 v.
 
 Barker
 
 had settled the rule that infidels are to be sworn according to the form which they hold to be most sacred and obligatory on their consciences.
 

 If it be admitted, for the sake of the argument, that, besides prescribing forms for general use, the Legislature had the purpose of altering the common law, so as to exclude Jews and infidels, who believe in a God, and Christians, who do not believe in future rewards and punishments, from the
 
 privilege
 
 of taking the oaths which are required to enable them to testify as witnesses, or to take any office or place of trust or profit, in other words, to degrade and persecute them for “ opinion’s sake,” then it is clear, that the statute, so far as this purpose is involved, is void and of no effect, because it is in direct contravention of the 19 sec. of the Declaration of Rights: “That all men have a natural and -unalienable right to worship Almighty God according to the dictates of their own consciences.”
 

 We go further, and express the opinion, that if
 
 Omychund
 
 v.
 
 Barker
 
 had not relieved the common law from the reproach
 
 *31
 
 of bolding Jews and infidels, wbo believe in a God, unfit to take an oath, treating them as
 
 “
 
 servants of the devils,” because their belief differs from ours in regard to the attributes of the Being who created and governs the Universe, or if any part of that reproach was still left,:the effect of this section of our declaration of rights, would be, to extirpate the error and tear it up by the roots.
 

 It was said in the argument,
 
 “
 
 to be sworn as a witness is
 
 no yyrwilege
 
 — the person loses nothing by being incompetent.” This is a narrow view of the question. If he be held incompetent as a witness on the ground that he cannot take an oath, it follows that he cannot swear to á book account. If an injunction is obtained, it must be made perpetual, because he cannot swear to his answer; nay, more, he cannot take the oath of office as a constable, sheriff, justice of the peace, judge, legislator or governor; in short, it would be the institution of a “ test oath,” towards which our revolutionary fathers had so just an abhorrence, and which is wholly repugnant to the tolerant and enlightened spirit of our institutions and of the age in which we live. There is no error.
 

 Per Curiam» _ Judgment affirmed.