## STATE v. JOHN EDWARDS.

### *Infant Witness—Verdict.*

1. The question as to whether or not an infant witness has sufficient mental capacity and sense of moral obligation to testify in a cause, is one of fact to be determined by the Court, and cannot be reviewed on appeal.

2. A failure of the Judge to instruct the jury, preparatory to a short. adjournment pending the trial of a capital case, that they should not discuss the case among themselves or with third parties during the recess of the Court, is not sufficient cause for a new trial, where it does not affirmatively appear that an improper verdict resulted from such omission, or, at least, that the jury were tampered with.

(*State* v. *Manuel*, 64 N. C. 601, cited and approved.)

INDICTMENT for Murder tried at Spring Term, 1878, of Johnston Superior Court, before *Seymour, J.*

The prisoner was charged with the killing of Kader J. Ballard, and that part of the case applicable to the points. decided, is:—

The first witness for the State was Ella Ballard, a daughter of the deceased, aged at the time of the trial six and a. half years. The presiding Judge examined this witness on the question of competency on the second day of the term, and being then of opinion that she had not sufficient religious instruction, advised the Solicitor not to send her before the grand jury. A true bill was however found upon the evidence of another witness. Upon the trial which took place a few days afterwards, the Judge examined her, and.

she then gave the ordinary answers to the ordinary questions put in such cases,—such as that God made her, that He would punish her if she told a falsehood, that she was sworn to tell the truth and would be punished if she did not do so. She was further examined in regard to general intelligence, and the Court was of the opinion that she was a child of more than usual intelligence for one of her age, and that she fully understood what was said to her, and the nature of her answers. It appeared that she had received religious instruction from her mother during the week the Court was in session. The prisoner objected to the admission of her testimony, objection overruled, and prisoner excepted. The witness then testified, that she was six years old, named Ella, her father was dead, John Edwards killed him, her father was pulling fodder in the field when she first saw prisoner getting over the fence, he went where her father was and stopped, her father said to him, "how are your folks," he said her father had cheated him, he had a gun and shot her father with it (describing the manner in which the gun was held) and then went off through the field to the woods. Witness pointed out prisoner after looking around the court room, and said that she knew him, had seen him often. One Joyner testified that she told him the same story on the day of the homicide, as the one related by her on the trial, and that deceased was found lying in said field, and that tracks led to the woods. Another witness testified that she heard the report of the gun, that witness, Ella, came running to deceased's house, and upon being asked what was the matter, said that John Edwards had killed her father. This was also corroborated by another witness.

After the testimony was closed, the Court adjourned for supper; the jury were kept together, but were not instructed that they should not converse with any one or among themselves about the case; nor was the Court requested to give

such instruction, nor was it suggested that any one had communicated with the jury or that they had discussed the case; and for failure to instruct as aforesaid, the prisoner moved for a new trial, which motion was overruled. There was a verdict of guilty. Judgment. Appeal by prisoner.

*Attorney General* and *Busbee & Busbee* for the State.
No counsel for the prisoner.

READE, J. Formerly the age at which infants might be examined as witnesses was almost arbitrary. They were not regularly admissible under fourteen, subject to exceptions. At one time it was a general rule that none could be admitted under nine years, very few under ten. Gilb. Ev. 144; 1 Hale P. C. 302; 2 Ib. 278; 1 Phil. Ev. But of late years since the means and opportunities for the early cultivation of the intellect have multiplied, a more reasonable rule has been adopted, and age is not the test, but the degree of understanding which they possess, including their moral and religious culture. 1 Phil. Ev., 1 East P. C. 448; 1 Leach 190; Roscoe Cr. Ev. 106 n. So formerly, deaf and dumb persons were classed with idiots, and were incapable of crime, and incompetent as witnesses; but since the facilities for educating them, the rule is abrogated.

In the case of infants where there was sufficient capacity to understand the transaction and to communicate it, but not sufficient moral and religious impression to comprehend the obligation of an oath, time has been allowed to make the impression and to cultivate the conscience. 1 Leach, 199, 430.

There being now no arbitrary rule as to age, and it being a question of capacity, and of moral and religious sensibility in any given case whether the witness is competent, it must of necessity be left mainly if not entirely to the discretion of the presiding Judge. *State* v. *Manuel,* 64 N. C. 601. It

·may be stated however that a child of tender years ought to be admitted with great caution; and where there is doubt it ought to be excluded. The formal answers to the usual questions,—who made you? what will become of you if you swear to a lie? and the like, are so easily taught, that much more ought to be required. The capacity of the child may be ascertained not only by examining it, but other persons who have had the care of it.

Although the capacity of the child in this case is not for our consideration, yet it is gratifying to find upon our examination of the testimony, that it was sensible and clear, and that it was corroborated where corroboration could be expected by other evidence. We can not say that there was error in admitting it.

The objection of the defendant,—that His Honor did not caution the jury not to allow themselves to be tampered with during recess, has no force in it. If the jury had been tampered with, it might have vitiated their verdict, whether they had been cautioned or not; but as they were not tampered with, their verdict is good.

No error. Judgment affirmed.