### STATE v. WILLIS PITT.

(Filed 11 March, 1914.)

1. **Indictment—Motions to Quash—Interest of Grand Juror.**
   A motion to quash a bill of indictment on the ground that the foreman of the grand jury was interested in the prosecution will be denied when it appears that the foreman took no part in passing upon the indictment and signed the bill under the direction of the grand jury and returned it in open court. Revisal, sec. 3232.

2. **Witnesses—Qualifications—Appeal and Error.**
   The determination of the trial judge of the disqualifications of witnesses to testify for lack of sufficient age or mental capacity is not reviewable on appeal. The religious requirements of a witness discussed, and Revisal, secs. 1496 (29), 2360, and 2354, referred to by CLARK, C. J.

3. **Criminal Law — Larceny from Employer — Confidence—Trials—Evidence.**
   Upon a trial for larceny from an employer, evidence of whether or not the prisoner was trusted by the employer is incompetent.

4. **Criminal Law—Instructions—"Reasonable Doubt"—Definition.**
   No particular formula is required of the judge in defining to the jury what is "reasonable doubt" in a criminal action; and his stating it to be "the same kind of reasonable doubt that an honest man meets up with in human life" is held to be no error in this case.

WALKER and ALLEN, JJ., concur in result.

APPEAL by defendant from *Whedbee, J.,* at August Term, 1913, of PITT.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*
*Julius Brown for defendant.*

CLARK, C. J. The defendant was convicted of larceny of the corn of one J. R. Bunting, standing in the field. The testimony came from eye-witnesses and was clear and explicit. The first exception is to the refusal of the court to quash the bill of indictment on the ground that said Bunting, who was foreman

STATE *v.* PITT.

of the grand jury that passed on the bill, was also the prosecutor and swore out the warrant before a justice of the peace. The court found as a fact that Bunting at the time that the grand jury was considering the bill retired from the grand jury room and did not discuss the case with the grand jury nor vote on passing the bill, and that he did nothing in regard to it except that as foreman of the grand jury he signed the bill at the direction of the grand jury and carried the indictment into court.

"The general rule has been laid down that interest in a particular prosecution other than a direct pecuniary interest will not disqualify a grand juror or be ground of objection to an indictment in the finding of which he participates. Accordingly, in the absence of statutory provisions to the contrary, the fact that a person has originated a complaint against the person accused of crime, or is a witness for the prosecution, does not operate as a disqualification. And the same rule has been applied to a person who has evinced a desire and purpose to enforce the law against the particular kind of crime, or has subscribed funds for the purpose of legitimately suppressing a particular violation of law." 20 Cyc., 1301, title, "Grand Jury."

In *S. v. Sharp,* 110 N. C., 604, where there is a full discussion of objections to the competency of a grand jury, it is held that the fact that a son of the prosecutor was a member of the grand jury did not vitiate the indictment, though he had actively participated in finding the bill.

In *S. v. McDonald,* 73 N. C., 356, it was held that a grand juror was a competent witness on the trial of the defendant. Revisal, 3232, provides that grand juries shall return all bills of indictment in open court through the acting foreman, except in capital felonies, and it has been often held that an indictment need not necessarily be signed by any one. *S. v. Mace,* 86 N. C., 668.

Exceptions 2 and 3 are to the ruling of the court that two witnesses, respectively 11 and 12 years old, were of sufficient age and capacity to testify. The competency of a witness to testify

is determined by the trial court, and is not reviewable on appeal. *S. v. Finger,* 131 N. C., 781; *S. v. Perry,* 44 N. C., 330; 40 Cyc., 2200.

One of these witnesses, 11 years old, testified that if he swore to a lie they would put him in jail; that he intended to tell the truth, and was going to tell what he knew. The other witness, 12 years old, testified that he had never been in court before; that when he kissed the book it meant that he would tell the truth; that if he should tell a lie they would put him in the lockup. When asked, "What else?" he replied, "I don't know, sir." The finding of the judge that these witnesses were competent to testify was conclusive, and not reviewable. This is so held both as to their moral and religious sensibility and their intelligence. *S. v. Manual,* 64 N. C., 603; *S. v. Edwards,* 79 N. C., 648.

*Shaw v. Moore,* 49 N. C., 25, is a very interesting discussion as to the disqualification of a witness on account of his religious belief. The Court there held that one who believed in the existence of a Supreme Being was a competent witness, though he did not believe that punishment would be inflicted in the world to come. In that case it would seem that the witnesses were of age. If it were open to us to review the findings of fact of his Honor as to the competency of these witnesses, it would seem that they gave very intelligent replies and a sense of their responsibility and intention to tell the truth, and that punishment would be awarded them should they fail to do so. The fact that one of the witnesses said he "did not know" what punishment would happen to him beyond imprisonment in jail should not disqualify him, in view of the other evidence showing his intelligence and sense of responsibility.

However, as already stated, the finding of the judge in such case is conclusive, and not reviewable by us. He sees the witnesses and can judge better of their intelligence and sense of responsibility than can possibly be transmitted to us on paper.

In *Shaw v. Moore, supra, Pearson, J.,* said that "in the old cases it was held to be common law that no infidel (in which class Jews were included) could be sworn as a witness in the

courts of England." He then proceeds to say that the reason for this as given by my Lord Coke, "to say the least of it, is narrow-minded, illiberal, bigoted, and unsound." And adds that "Lord Hale, notwithstanding the opinion of Coke and the old cases, held that a Jew is a competent witness and may be sworn on the Old Testament, and such has ever since been taken to be the law." We know that the Old Scriptures, which is the Hebrew Bible, do not teach a future life, and hence there is absent therefrom the doctrine of future rewards and punishments. Indeed, the New Testament teaches that "Life Eternal came through Jesus Christ." In the same case, *Shaw v. Moore, supra, Pearson* refers to *Omychund v. Barker,* 1 Atk., 19, as a great case, "for it relieved the common law from an error that was a reproach to it." In that case "a Gentoo, who did not believe in either Old or New Testament," was held to be a competent witness, though it did not appear "whether according to Gentoo religion rewards and punishments are to be in this world or the world to come. The decision was made without ascertaining how the fact was; so it must have been considered by the Court to be immaterial."

*Judge Pearson* further says that it was insisted on the argument that, however it was decided in *Omychund v. Barker,* it was otherwise under our statutory provisions prescribing the forms of oath. He says, as to this argument: "We think it manifest, by a perusal of the statute, that it was not intended to alter any rule of law, but the sole object was to prescribe forms adapted to the religious belief of the general mass of citizens, for the sake of convenience and uniformity."

The form of oath for witnesses now prescribed (Rev., 1496 (29), and 2360) simply requires the witness to swear that his evidence "shall be the truth, the whole truth, and nothing but the truth." The provision in Revisal, 2354, as to the manner of swearing is, as *Judge Pearson* says, merely a form "adapted to the religious belief of the general mass of citizens for the sake of convenience and uniformity." Revisal, 2363 (enacted 1899, ch. 50), validated oaths theretofore taken not in a manner prescribed by the laws of 1777, now Revisal, 2354.

If such reply from one who is honestly ignorant of what will happen to him in another world shall render him incompetent to testify, not only the administration of justice will often be hindered, but unwilling witnesses can block needed investigations by professing like ignorance.

It was excepted that the defendant was not allowed to state that his employer trusted him with his property. This is not an issue in this cause. The question is not whether he was trusted by his employer, nor that he was unworthy of that confidence, but, Did he steal the corn of the prosecutor, as charged in the bill of indictment? It would not have been competent for the State to show that the defendant was not trusted, or was suspected by his employer. Nor is it competent for the defendant to testify that he was trusted.

Nor do we think it good ground of exception that the judge in his charge, in attempting to define what constitutes a reasonable doubt, said: "A reasonable doubt in the jury box is exactly the same kind of reasonable doubt that an honest man meets up with in human life." The law does not require that any particular formula shall be used in charging upon the doctrine of reasonable doubt. *S. v. Dobbins,* 149 N. C., 465; *S. v. Brabham,* 108 N. C., 793; *S. v. Matthews,* 66 N. C., 106; *S. v. Oscar,* 52 N. C., 305.

No error.

WALKER, J., and ALLEN, J., concurring in result.