ELSIE LANIER, AS GUARDIAN OF PENNIE LANIER, v. W. H. BRYAN.

(Filed 25 October, 1922.)

1. **Witnesses — Qualification — Oath—Mental Capacity—Courts—Discretion—Appeal and Error.**

    It is the question of the mental capacity of a witness to understand and appreciate the solemn obligation imposed on him by oath to tell the truth, and his ability to correctly narrate the facts involved in the controversy, that determines his eligibility as a witness; and his youth and adjudged imbecility of mind are only evidentiary in the determination of the question by the judge; and his decision thereon, in the absence of a special finding of the facts, is not reviewable on appeal.

2. **Appeal and Error—Harmless Error—Witnesses—Qualification—Evidence—Courts—Erroneous Opinion.**

    Where the mental capacity of a witness is the question before the trial judge to determine his eligibility as such, and upon the testimony of a medical expert he has, as a matter of law, erroneously adjudged the witness to be a competent one, this error is cured, or rendered immaterial by his subsequently making the same finding after hearing the testimony of other witnesses, and the testimony of the witness sought to be excluded, which supported his former ruling.

3. **Witnesses — Qualification — Courts— Rulings—Evidence—Findings—Presumptions.**

    Where the trial judge has heard competent evidence sufficient to sustain his ruling, and adjudges that the witness is competent to testify in the action, it will be presumed, on appeal to the Supreme Court, that he has found facts sufficient to sustain his rulings, when it is silent in that respect.

APPEAL by defendant from *Lyon, J.,* at April Term, 1922, of ONSLOW.

Civil action to recover damages for the seduction of the plaintiff. When the plaintiff was called as a witness the defendant objected to her examination on the ground that she was incapable of understanding the obligation of an oath and mentally incapable of testifying to the occurrences set forth in the complaint. His Honor then heard the testimony of Dr. McNairy, an expert in mental diseases, who had treated her in the Caswell Training School, and therefrom found the following as facts:

1. The plaintiff, who was over the age of 21 years at the trial, had been adjudged in a proceeding instituted and conducted before the clerk of the Superior Court of Onslow County to be of unsound mind.

2. She was incapable of any sense of moral obligation and of understanding the nature of an oath.

3. Mental defectives are idiots, imbeciles, or morons, and the plaintiff is a member of the second class, and has a mentality not in excess of a normal child ranging from three to six years of age.

Upon these facts, and what appeared from Dr. McNairy's testimony, his Honor held as a matter of law that the plaintiff was a competent witness, and permitted her to be examined. The defendant excepted.

The plaintiff was then examined, and his Honor, at the conclusion of her evidence, without specifically finding the facts, held upon all the evidence, of course including her own testimony, that she was competent to testify as a witness. The defendant again excepted. The issues were answered in favor of the plaintiff.

Judgment, and appeal by the defendant.

*Cowper, Whitaker & Allen, George R. Ward,* and *Duffy & Day* for plaintiff.

*Shaw & Jones, Frank Thompson,* and *McLean, Varser, McLean & Stacy* for defendant.

ADAMS, J. The tests that have usually been applied to determine the competency of a person offered as a witness are those of age, mental power, religious belief, and capacity to understand the nature and obligation of an oath. Particularly with reference to the first three of them the decisions have not been uniform. At one time the age of competency was fixed at fourteen, and children over that age were examined as a matter of course; but in some of the earlier decisions it was held that children under nine years of age were incompetent to testify, and that the competency of those between nine and fourteen was dependent upon their understanding and moral sense. With respect to age, it is now generally held that no precise minimum limit can be fixed, and that as to mentality the controlling factor is the strength of the witness's understanding, or the degree of his intelligence. *S. v. Edwards,* 79 N. C., 650; *S. v. Meyer,* 14 A. & E., Anno. Cas., 3, n.

In a number of American cases decided in the first half of the nineteenth century it was held that idiots and insane persons were not competent to be witnesses; but subsequently the courts, "keeping pace with the progress of science" and the demands of a more enlightened period, relaxed the rigor of these decisions and modified the former strictness of the rule. It may be said that the substance of the modern doctrine was adopted in England in 1851, and announced by *Lord Campbell* in *Reg. v. Hill.* There a patient in a lunatic asylum was offered as a witness for the crown to testify on the trial of the defendant, who was prosecuted for homicide. When called and objected to he said, in part, upon examination as to his competency: "I am fully aware I have spirits. . . . I know which are mine. Those that ascend from my stomach and my head, and also those in my ears. I don't know how many they are. The flesh creates spirits by the palpitation of the nerves and the

rheumatics; all are now in my body and round my head; they speak to me incessantly, particularly at night. . . . They are speaking to me now; they are not separate from me. . . . They can go in and out through walls and places which I cannot. I go to the grave; they live hereafter. . . . My ability evades me while I am speaking, for the spirit ascends to my head. . . . It is perjury, the breaking of a lawful oath or taking an unlawful one; he that does it will go to hell for all eternity." He was then .sworn and gave a collected and rational account of a transaction which he said he had witnessed.

Discussing his competency, *Lord Campbell* said: "Various authorities have been referred to which lay down the law that a person *non compos mentis* is not an admissible witness. But in what sense is the expression *non compos mentis* employed? If a person be so to such an extent as not to understand the nature of an oath, he is not admissible. But a person subject to a considerable amount of insane delusion may yet be under the sanction of an oath, and capable of giving very material evidence upon the subject-matter under consideration. The just investigation of truth requires such a course as has been pointed out to be pursued. . . . It has been contended that the evidence of every monomaniac must be rejected. But that rule would be found at times very inconvenient for the innocent as well as for the guilty. The proper test must always be, Does the lunatic understand what he is saying, and does he understand the obligation of an oath? The lunatic may be examined himself, that his state of mind may be discovered, and witnesses may be adduced to show in what state of sanity or insanity he actually is; still, if he can stand the test proposed, the jury must determine all the rest. In a lunatic asylum the patients are often the only witnesses to outrages upon themselves and others, and there would be impunity for offenses committed in such places if the only persons who can give information were not to be heard." 5 Cox Cr. Law Cas., 266. The prevailing doctrine is in accord with this decision, and the principle is generally recognized that a lunatic or a person affected with insanity is competent to be a witness if he has sufficient mind to understand the nature and obligation of an oath and correctly to receive and impart his impressions of the matters which he has seen or heard. *People v. Enright*, 226 Ill., 221; *Coleman v. Com.*, 25 Gratt., 865; 18 A. R., 711; *Worthington v. Mencer*, 17 L. R. A., 407; *S. v. Myers*, 37 L. R. A., 423, and note; *S. v. Pryor*, 46 L. R. A. (N. S.), 1028, and note; *S. v. Simes*, 9 A. & E., Anno. Cas., 1217; *Dis. of Col. v. Armes*, 107 U. S., 519.

But the defendant contends that Pennie Lanier was not influenced by any religious belief, and was not capable of comprehending the solemnity, nature, and purpose of an oath. It is conceded that a witness should be sensible to the obligation of the oath that he assumes, but

apparently the interpretation of the expression has not been uniform. In *Shaw v. Moore,* 49 N. C., 26, *Judge Pearson* said: "The law requires two guaranties of the truth of what a witness is about to state: he must be in the fear of punishment by the laws of man, and he must also be in the fear of punishment by the laws of God, if he states what is false; in other words, there must be a temporal and also a religious sanction of his oath. In reference to the first, no question is made; but it is insisted that the religious sanction required is the fear of punishment in a future state of existence.

"This position is not sustained by the reason of the thing, for, if we divest ourselves of the prejudice growing out of preconceived opinions as to what we suppose to be the true teaching of the Bible, it is clear that, in reference to a religious sanction, there is not ground for making a distinction between the fear of punishment by the Supreme Being in this world, and the fear of punishment in the world to come; both are based upon the sense of religion." In *S. v. Pitt,* 166 N. C., 270, two boys, aged respectively eleven and twelve, were challenged on the ground of their incompetency, and upon examination each of them said if he swore to a lie he would be imprisoned—one of them saying, in addition, that he intended to tell the truth, and was going to tell what he knew, and the other, that when he kissed the Book it meant that he would tell the truth. There was no further reference to religious sanction, and the trial judge admitted them as witnesses. On appeal the ruling was sustained, and the *Chief Justice,* citing with approval *Shaw v. Moore,* 49 N. C., 26, said that the finding of the court was conclusive on the question both of the intelligence and of the moral and religious sensibility of the witnesses.

This decision seems to have been based on the principle that where the trial judge, without particularly determining the facts, adjudges a person competent to be a witness, his judgment is not subject to review because it implies a finding of the requisite facts; and by an application of the principle to that case it appeared from the judge's finding that the witnesses had a sufficient comprehension of the obligation of an oath and the way in which they expressed their conception of such obligation was of secondary importance. The decision approves the doctrine that the witness should have due appreciation of a moral duty to tell the truth, and conforms to the general rule that the judgment of the trial judge on the question of the competency of a person who is offered as a witness is a matter of discretion and will not be disturbed on appeal, unless there is an abuse of discretion, or unless the order admitting or rejecting the witness involves the erroneous construction of a legal principle. *S. v. Perry,* 44 N. C., 333; *S. v. Manuel,* 64 N. C., 601; *S. v. Edwards,* 79 N. C., 650; *S. v. Finger,* 131 N. C., 781; *S. v. Pitt,* 166

N. C., 270; *People v. Enright,* Anno. Cas., 1913 E, 328, note; *S. v. Meyer,* 14 Anno. Cas., 7, note.

It is true that the order made by his Honor at the conclusion of Dr. McNairy's testimony involves the construction of a legal principle, and it would demand serious consideration if it were the only order relating to the competency of the plaintiff. But immediately after this order was made the plaintiff was examined as a witness, and after hearing her testimony and considering it in connection with other evidence his Honor, without finding the facts, entered of record a general order adjudging the plaintiff competent to testify, and thus practically reversed and nullified the second finding of facts and so much of the third as may suggest want of capacity from immaturity of age, and brought the case within the general rule stated above, freed from the exceptions. The defendant's assignment of error as to the plaintiff's competency is therefore overruled. The motion for nonsuit was properly dismissed, for the evidence, considered independently of plaintiff's testimony, was sufficient to warrant its submission to the jury. We find no error in the record which entitles the defendant to a new trial.

No error.