DAVID J. ARTESANI, BY HIS NEXT FRIEND, J. H. ARTESANI v. HAROLD RICHARD GRITTON AND DURHAM LIFE INSURANCE COMPANY
AND
J. H. ARTESANI v. HAROLD RICHARD GRITTON AND DURHAM LIFE INSURANCE COMPANY.

(Filed 4 May, 1960.)

**1. Witnesses § 4—**

The test of the competency of a child to testify is not age but capacity to understand and relate under the obligation of an oath a fact or facts which will assist the jury in determining the truth with respect to the ultimate facts, and a ruling excluding the testimony of a child on the arbitrary basis of age of the child, is error.

**2. Appeal and Error § 46:    Trial § 19—**

The discretion to determine the competency of a witness on the basis of age or mentality, in the same manner as the power to determine the qualification of experts or the voluntariness of confessions, is the power to determine a factual question in accordance with established rules of law and is not an arbitrary power, and therefore when the court hears evidence to determine the question of competency its factual conclusions are binding if supported by any evidence, but if the court applies to the facts found by it an incorrect legal principle, the conclusion is reviewable and will be corrected on appeal.

**3. Witnesses § 4—**

Whether a child possesses sufficient mental capacity to testify is to be determined on the basis of the mental capacity of the child at the time he is called upon to testify and not his capacity at the time the subject matter of the testimony transpired.

**4. Automobiles § 41m—**

The evidence adduced in this case, together with evidence erroneously excluded, *is held* sufficient to be submitted to the jury on the question of whether defendant motorist by the exercise of reasonable care could or should have seen the child on the highway in time to have avoided striking him.

**5. Appeal and Error § 51—**

On appeal from judgment of involuntary nonsuit, plaintiff's evidence erroneously excluded will be considered together with the evidence admitted.

APPEAL by plaintiffs from *Johnston, J.,* November 23, 1959 Term, of FORSYTH.

These actions were instituted to recover damages, hospital bills, and loss of services resulting from injuries sustained by David Artesani, the minor son of J. H. Artesani, when struck by an automobile operated by defendant Gritton as agent for the corporate defendant. Plaintiffs allege the automobile was negligently operated. The causes were consolidated for trial. At the conclusion of plaintiffs' evidence, motions for nonsuit were allowed. Plaintiffs appealed.

*Deal, Hutchins and Minor for plaintiff appellants.*
*Hudson, Ferrell, Carter, Petree & Stockton for defendant appellees.*

RODMAN, J. Plaintiffs, residents of a suburb of Winston-Salem, live on the north side of Bethabara Road, which runs in an easterly and westerly direction. The road is paved, with dirt shoulders on the side. The paved area is 18 feet in width and the south shoulder at the scene of the accident has a width of 7 feet. A mail box is located at the southern edge of the shoulder opposite the Artesani home. Traveling from east to west, one encounters a sharp curve to the right which terminates just before reaching the Artesani property, permitting an unobstructed view of the highway to the mail box for 250 feet. Because of the curve the view to the entrance of the Artesani yard would be less than this, but how much less does not appear from the evidence.

About 2:30 p.m. on 9 April 1957 defendant Gritton was driving his automobile westwardly on the Bethabara Road. He was accompanied by his superior, Mr. Poindexter. Gritton was in the northerly lane, the proper lane for travel moving west as he was. His automobile struck David and inflicted serious injuries to his right shoulder, leg, and head. The car left skid marks for a total distance of 70 feet. These marks began 21 feet east of the mail box. The child was carried with the car until it stopped at the end of the skid marks. Gritton, examined adversely by plaintiff, testified: "The first time I saw the child was when he was directly in front of my car, some 4 or 5 or 10 feet, whatever it was, right directly in front, approximately midways of the righthand section of the road. Mr. Poindexter saw the child just an instant before I saw him, and he said 'Look out!' . . .

The first time I remember seeing the child he was right in front of me and he was running, and he was over on my side of the road." Gritton, immediately following the accident, told a police official that when Poindexter called attention to the child "he (Gritton) looked up at that time and the child was about 6 foot in front of him."

Liability of defendants is based on the asserted failure of the driver to maintain a proper lookout, which would have disclosed the presence of the child crossing the highway from the mail box to his home. Plaintiffs contend when traveling in that direction and from the mail box the child would have traversed some 20 feet of highway in plain view of defendant. To support their contention they point to the injuries which were on the right side of the body, indicating the child was facing north when struck; and as additional proof that the child was returning from the mail box to his home, he was called as a witness for the purpose of showing why he was on the road and where he came from. Defendants objected to the proposed testimony, asserting that the child was, because of his youth, not competent to testify. Thereupon the jury was excused, the child was sworn. He identified the Bible, said that he knew what it was, that it contained stories about God, and said that people who told lies were punished. He stated that he lived on the Bethabara Road. At the time of the trial he was in the second grade of the public school. He was then asked and answered these questions:

"Q Can you tell the Judge what you were doing?

"A I was going across the street to mail a letter.

"Q What were you doing when the car hit you? Were you going across the street, or the other way?

"A I was going back, you know, across the street back home.

"Q Back home?

"A (The witness nodded his head affirmatively.)

"Q You don't remember anything else about it, do you, David?

"A I do.

"Q What else do you remember?

"A I remember how I was inside. I remember how it happened inside and everything, when I started to go across the street, what kind of feeling I had.

"Q What kind of feeling you had?

"A Feeling. I had a bad feeling.

"Q Do you remember anything else, David?

"A No."

Thereupon the court directed this entry to be made: "The Court finds as a fact that David Artesani is, as of this date, seven years

and three months old, and on the date of the alleged collision between the motor vehicle of the defendants and the plaintiff, was four years and eight months old, and the Court is of opinion that by reason of age that the witness is incompetent to testify as to matters concerning the alleged collision, and in its discretion sustains the objection of the defendants to the proposed testimony of the witness."

Plaintiff J. H. Artesani came to the scene of the accident about fifteen minutes after the child was struck. He was then lying in the road and was conscious. He asked: "David, how do you feel?" The child replied: "I hurt." The witness then testified that David said: "Daddy, I was at the mail box, mailing a letter to Nana, and I got hit on my way back." This statement made by the child to his father was excluded.

Plaintiff assigns the exclusion of the proffered testimony of the child and father as prejudicial error.

Whether there was error in excluding the testimony must be determined by interpreting the ruling made by the trial judge with respect to the competency of the child to testify.

The test of competency is not age but capacity to understand and relate under the obligation of an oath a fact or facts which will assist the jury in determining the truth with respect to the ultimate facts which it will be called upon to decide. *S. v. Edwards,* 79 N.C. 648; *Lanier v. Bryan,* 184 N.C. 235, 114 S.E. 6; *S. v. Satterfield,* 207 N.C. 118, 176 S.E. 466; *S. v. Jackson,* 211 N.C. 202, 189 S.E. 510; *Carpenter v. Boyles,* 213 N.C. 432, 196 S.E. 850; *S. v. Merritt,* 236 N.C. 363, 72 S.E. 2d 754; *Cross v. Commonwealth,* 77 S.E. 2d 447; *Hill v. Skinner,* 79 N.E. 2d 787; *Senecal v. Drollette,* 108 N.E. 2d 602; Stansbury, N.C. Evidence, sec. 55; 58 Am. Jur 99-100; 97 C.J.S. 449.

Wigmore states the law thus: "But this much may be taken as settled, that no rule defines *any particular age* as conclusive of incapacity; in each instance the capacity of the particular child is to be investigated." Wigmore on Evidence, 3rd ed., sec. 505.

Courts, in declaring and applying the rule which determines the competency of children to testify, have said the question of competency rests in the sound discretion of the trial judge. Typical is the statement of *Reade, J.,* "(I) t being a question of capacity, and of moral and religious sensibility in any given case whether the witness is competent, it must of necessity be left mainly if not entirely to the discretion of the presiding Judge." *S. v. Edwards, supra.*

This discretion to determine the competency of evidence is the power to determine a factual question in accord with established rules of law. It is not an arbitrary power. *Jarrett v. Trunk Co.,* 142 N.C.

466. When the court hears evidence to determine competency, its factual conclusion will not be set aside on appeal if there be any evidence to support the finding. The weight which the trial judge accords the evidence rests in his discretion. The reason is manifest. *S. v. Pitt,* 166 N.C. 268, 80 S.E. 1060. If to the facts so ascertained the court applies an incorrect legal principle, the error so committed will be corrected on appeal. *S. v. Grundler,* 249 N.C. 399, 106 S.E. 2d 488; *McGill v. Lumberton,* 215 N.C. 752, 3 S.E. 2d 324; *Hanford v. McSwain,* 230 N.C. 229, 53 S.E. 2d 84; *S. v. Fuller,* 114 N.C. 885.

The basic rule to determine the competency of the proffered testimony is the same whether applied to those of tender years or to adults of subnormal mentality, or to the qualification of experts, *Hardy v. Dahl,* 210 N.C. 530, 187 S.E. 788; *Pridgen v. Gibson,* 194 N.C. 289, 139 S.E. 443; *Smith v. Kron,* 96 N.C. 392, or confessions challenged as involuntary, *S. v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572; *S. v. Hammond,* 229 N.C. 108, 47 S.E. 2d 704; *S. v. Hairston,* 222 N.C. 455, 23 S.E. 2d 885; *S. v. Whitener,* 191 N.C. 659, 132 S.E. 603.

Competency is to be determined at the time the witness is called to testify. *Cross v. Commonwealth, supra.*

When the child was called as a witness he was seven years of age. He had entered public school as soon as the law permitted. G.S. 115-162. He had successfully completed his first grade work. In this connection it is interesting to note that in a booklet, "Language Arts in the Public Schools Of North Carolina," issued by the Superintendent of Public Instruction, it is said with regard to first grade children:

"Immediately following the morning devotions each day, children are encouraged to express themselves along some of the following lines:

"Tell of some personal experience.
Tell a story heard before.
Create a story.
Say a poem, taught in classroom.
Read a story from a library book or from a book brought from home.
Report on a library book.
Imitate an animal.
Ask riddles.
Describe a picture.
Dramatize a character in a story."

He was at the time of the trial in the second grade. Based on the questions asked and answers given, we see nothing which would disqualify him when the correct rule of law is applied, that is, mental capacity as distinguished from mere age.

The court, as we interpret its ruling, disqualified the witness not because he was in fact lacking in mental capacity, but it held him incompetent solely "by reason of age." This was not a finding of fact but a legal conclusion which was erroneous. The superadded statement that the ruling was in the court's discretion added no force. It could not correct the legal error. *GMC Trucks v. Smith*, 249 N.C. 764, 107 S.E. 2d 746.

If the child was possessed of sufficient mental capacity to testify, it was competent to corroborate him by showing the statement made to his father shortly after the accident happened or in any other proper manner.

Considering all of the evidence offered, we are of the opinion that it was sufficient to support a finding that the injuries were proximately caused by the failure of the driver to exercise due care in the operation of his motor vehicle.

Upon another trial the court will hear such evidence as may be necessary to determine as a matter of fact the mental capacity of the child, and, based on its finding, rule as a matter of law on the competency of the evidence offered.

Reversed.