IN THE MATTER OF: DAKOTA FAIRCLOTH, AMANDA FAIRCLOTH, MARGARET FAIRCLOTH AND JAMES FAIRCLOTH, JR., MINOR CHILDREN

No. COA99-505

(Filed 4 April 2000)

**1. Evidence— expert opinion—effect testifying would have on minor children**

The trial court did not abuse its discretion in a child abuse and neglect case by admitting the testimony of two therapists as to the effect testifying would have on the minor children because: (1) both witnesses were better qualified than the fact-finder to have an opinion upon the effect that giving testimony would have on the children's behavioral, mental and emotional conditions, N.C.G.S. § 8C-1, Rule 702(a); and (2) preliminary questions con-

cerning the qualifications of a person to be a witness are determined by the trial court, which is not bound by the rules of evidence in making such a determination, N.C.G.S. § 8C-1, Rule 104(a).

**2. Witnesses— child—ability to tell truth—improper focus on effect on mental health**

The trial court's order in a child abuse and neglect case that declared the three children to be unavailable and unable to testify was erroneous as a matter of law because the voir dire was incorrectly directed to the effect the children's testifying would have on their mental health, rather than upon the ability of the children to understand their obligation to tell the truth and their ability to relate events which they may have seen, heard, or experienced. N.C.G.S. § 8C-1, Rules 601 and 804(a)(4).

Appeal by respondent father from judgment entered 16 December 1998 by Judge John W. Dickson in Cumberland County District Court. Heard in the Court of Appeals 17 February 2000.

*Cumberland County Department of Social Services, by David Kennedy, for petitioner-appellee.*

*Carmen J. Battle and William E. Brown for respondent-appellant James D. Faircloth.*

MARTIN, Judge.

On 4 August 1997, the Cumberland County Department of Social Services (CCDSS) filed a juvenile petition alleging that James David Faircloth (d.o.b. 4 June 1987), Dakota Faircloth (d.o.b. 22 September 1990), Amanda Faircloth (d.o.b. 7 August 1992) and Margaret Faircloth (d.o.b. 26 January 1995) were abused and neglected children. The allegations arose as a result of a report made 30 July 1997 by the children's babysitter, who observed the presence of bruises on Amanda. The children were placed in the custody of CCDSS, and such custody was continued by a series of orders until an adjudicatory hearing was commenced on 15 December 1998.

At the adjudicatory hearing, CCDSS presented evidence from the CCDSS social worker, two physicians and a psychologist. Their testimony included hearsay evidence of statements made by the children, to which respondent father did not object. Upon the conclusion of the CCDSS evidence, respondent father sought to call the three older

IN RE FAIRCLOTH

[137 N.C. App. 311 (2000)]

children as witnesses and forecast that they would testify that the abuse was perpetrated by someone other than defendant. Upon objection by CCDSS and by the children's mother, the court heard testimony from Judith Hill, a therapist for Dakota and Amanda, and Kim Herring, a therapist for James, Jr. The court then made the following findings and conclusions:

> On the respondent father, James Faircloth's, calling as a witness the minor child Dakota Faircloth, this being opposed by the petitioner, by the Guardian ad Litem and by respondent Tisha Faircloth, the court having heard evidence and arguments of counsel, makes the following findings of fact based upon clear, cogent and convincing evidence.

> That Dakota Faircloth's date of birth is September 22, 1990; that he has been in the custody of the Department of Social Services since July of 1997; that during that period of time he has been undergoing continuous therapy; that he is currently in a therapeutic group home.

> That according to Judith Hill, a clinical social worker and currently the clinical therapist for Dakota, it would be extremely detrimental to the mental well-being of [Dakota] to face the respondent James D. Faircloth.

> That according to his clinical social worker, it would be extremely detrimental to Dakota's well-being for him to be questioned in any setting as to these matters.

> Based upon the foregoing, the court finds as a matter of law that Dakota Faircloth is unavailable and unable to testify at this hearing due to his current mental status and the harm to him which would occur were he to be forced to testify. The court reserves the right to add additional findings of fact in its final order as to this.

> As to Amanda Faircloth, the court finds that Amanda Faircloth's date of birth is August 7, 1992; that she has been in the custody of the Department of Social Services since July of 1997; that she is currently in a therapeutic foster home and has been receiving psychiatric and psychological treatment since being placed in DSS custody, and is still undergoing therapeutic treatment.

> That she has been admitted to a psychiatric hospital twice since being in DSS custody; that in the recent past, she has begun

urinating and defecating at inappropriate times and places, an activity which she had done at an earlier time, which she has now regressed to doing again; in addition, she has become physically aggressive.

That according to her clinical therapist, Judith Hill, it would be extremely detrimental to the mental health and well-being of Amanda if she were forced to testify in any setting concerning the matters involved in this case.

Based on the foregoing, the court concludes as a matter of law that Amanda Faircloth is unavailable and unable to testify at this hearing due to her existing mental health and the detriment which would be done her were she called upon to testify.

As to James David Faircloth, Jr., the court finds that his date of birth is June 4, 1987; that he has been in the custody of the Department of Social Services since July of 1997; that he has been receiving psychiatric and psychological treatment and therapy since being in DSS custody.

That according to this therapist, Kimberly Herring, he has expressed great fear of his father and it would be detrimental for James to have to face his father; that due to the nature of this proceeding and the wishes of James to be back with his mother, the therapist is of the opinion that any testimony he might give in this case could be highly suspect and unreliable and based on James' self-perceived needs and wants rather than the truth; that Ms. Herring is of the belief that James being called upon to testify in this proceeding under any setting would be counter-productive to his mental health and well-being and to his ongoing therapy.

The court concludes that James David Faircloth, Jr., is unavailable and unable to testify in this hearing because of his now-existing mental health and the detriment that would be done to him were he forced to testify in this proceeding.

As to all three orders, the court reserves the right to make additional findings of fact prior to signing the order.

Respondent father then offered evidence through other witnesses tending to show that the children had reported to others that they had been abused by their babysitter, rather than by respondent father.

At the conclusion of the hearing, the trial court found that each of the children had been abused in various respects, had been neglected,

and adjudicated them abused and neglected children. Respondent appeals from the final adjudicatory and dispositional order.

---

**[1]** Respondent father first assigns error to the admission of opinion testimony by Judith Hill and Kimberly Herring as to the effect testifying would have on the minor children. He contends that neither witness was competent to provide such testimony.

G.S. § 8C-1, Rule 702(a) provides:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

Whether a witness has the requisite knowledge or training to testify as an expert is within the exclusive province of the trial court, and its decision will not be overturned absent an abuse of discretion. *State v. Bullard*, 312 N.C. 129, 322 S.E.2d 370 (1984); *Robinson v. Seaboard System Railroad*, 87 N.C. App. 512, 361 S.E.2d 909 (1987), *disc. review denied*, 321 N.C. 474, 364 S.E.2d 924 (1988). "An expert need not have had experience in the very subject at issue, . . . [i]t is enough that through study or experience the expert is better qualified than the fact-finder to render the opinion regarding the particular subject." *In re Chasse*, 116 N.C. App. 52, 59, 446 S.E.2d 855, 859 (1994) (citations omitted).

Judith Hill testified that she is a clinical social worker employed by the Cumberland County Mental Health Center and had been assigned as a therapist for Dakota and Amanda Faircloth for approximately seven months. She has bachelor's degrees in sociology and in social work, a master's degree in social work, and is licensed as a therapist. She has training and experience in determining what kinds of external stimuli affect the behavior of children. Kimberly Herring testified that she had been seeing James Faircloth, Jr., for nearly a year. Ms. Herring is a licensed psychological associate and has a master's degree in counseling. Both testified extensively as to their observations of the children and the children's behavioral histories. Both witnesses, through their education, training, experience, and interaction as therapists for the children were better qualified than the fact-finder to have an opinion upon the effect that giving testimony would have on the children's behavioral, mental and emotional conditions.

Moreover, preliminary questions concerning the qualification of a person to be a witness are determined by the trial court, which is not bound by the rules of evidence in making such a determination. N.C. Gen. Stat. § 8C-1, Rule 104(a). In determining whether a person is competent to testify, the court may consider any relevant information which may come to its attention. *In re Will of Leonard*, 82 N.C. App. 646, 347 S.E.2d 478 (1986). Therefore, to the extent the testimony of Ms. Hill and Ms. Herring was relevant to the issue of the competency of the three children to testify, it was not error for the trial court to admit and consider the testimony.

[2] Respondent father further assigns error to the trial court's order declaring James, Jr., Dakota, and Amanda "unavailable and unable to testify" at the hearing. For the reasons which follow, we must agree.

At the time of the hearing in this case, juvenile proceedings were governed by Subchapter XI of Chapter 7A of the North Carolina General Statutes, the North Carolina Juvenile Code, which was repealed effective 1 July 1999 by Session Laws 1998-202, s.5 and replaced by Chapter 7B of the General Statutes. A policy of the former Juvenile Code, continued in the present Code, was "[t]o provide procedures for the hearing of juvenile cases that assure fairness and equity and that protect the constitutional rights of juveniles and parents." N.C. Gen. Stat. § 7A-516(2), repealed effective 1 July 1999, S.L. 1998-202, s.5. In furtherance of that policy, the former Code required, in an adjudicatory hearing to determine the existence or nonexistence of the conditions alleged in the juvenile petition, that the rights of juveniles and their parents to due process, including the right to confront and cross-examine witnesses, be protected, G.S. § 7A-631, repealed effective 1 July 1999, S.L. 1998-202, s.5, although the right to confront witnesses in such a civil proceeding is subject to "due limitations." *In re Barkley*, 61 N.C. App. 267, 270, 300 S.E.2d 713, 715 (1983).

The rules of evidence in civil cases apply in a proceeding where a juvenile is alleged to be abused and neglected. N.C. Gen. Stat. § 7A-634(b), repealed effective 1 July 1999, S.L. 1998-202, s.5. G.S. § 8C-1, Rule 601 provides that every person is competent to be a witness unless the court determines the witness is "(1) incapable of expressing himself concerning the matter as to be understood, either directly or through interpretation by one who can understand him, or (2) incapable of understanding the duty of a witness to tell the truth."

N.C. Gen. Stat. § 8C-1, Rule 601(b). As applied to children, " '[t]here is no age below which one is incompetent, as a matter of law, to testify.' " *State v. Fearing,* 315 N.C. 167, 173, 337 S.E.2d 551, 554 (1985) (quoting *State v. Jones,* 310 N.C. 716, 722, 314 S.E.2d 529, 533 (1984)). Likewise, even mentally deficient persons may be called as witnesses if capable of relating information and of understanding the obligation to tell the truth. See *Artesani v. Gritton,* 252 N.C. 463, 113 S.E.2d 895 (1960); Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence,* § 132 (5th ed. 1998). A ruling upon a challenge to competency is a matter within the discretion of the trial court and will not be reversed unless the ruling amounts to an abuse of discretion, *State v. Hicks,* 319 N.C. 84, 352 S.E.2d 424 (1987), or is based on an incorrect legal principle, *Artesani,* 252 N.C. 463, 113 S.E.2d 895.

We believe the trial court's ruling in the present case to have been based upon an incorrect view of the law. When CCDSS objected to respondent father's request to call James, Jr., Dakota, and Amanda as witnesses, the trial court correctly conducted a *voir dire* hearing. However, the focus of the *voir dire* was incorrectly directed to the effect the children's testifying would have on their mental health, rather than upon the ability of the children to understand their obligation to tell the truth and their ability to relate events which they may have seen, heard or experienced. Rather than determining whether all or any of the children were competent to testify under G.S. § 8C-1, Rule 601, the trial court disqualified them as being "unavailable" due to the detriment which would result to them if they testified, apparently relying upon the definition of "unavailability" contained in G.S. § 8C-1, Rule 804(a)(4) (inability to testify due to presently existing physical or mental condition). The question of a potential witness' unavailability becomes relevant, however, only with respect to the issue of admissibility of the witness' hearsay declarations pursuant to the exception contained in Rule 804(b). No issue of availability was presented in this case; no objection was interposed to the admission of the children's hearsay statements. Although we believe it is possible in a case such as the one before us for a child's presently existing mental condition resulting from abuse to so profoundly affect the child's ability to relate events and to understand the obligation to tell the truth as to render the child incompetent to testify, no such evidence was elicited from the therapists in this case, only that the event of testifying would be harmful to the children. Even the testimony of Ms. Herring that James, Jr., was likely not to be a reliable witness does not support his disqualification

**IN RE FAIRCLOTH**

[137 N.C. App. 311 (2000)]

where the trial court did not personally observe the child's ability to testify. See *State v. Benton*, 276 N.C. 641, 174 S.E.2d 193 (1970) (witness competent even though psychiatrist testified it was impossible for him to give reliable evidence); *Matter of Quevedo*, 106 N.C. App. 574, 419 S.E.2d 158, *appeal dismissed*, 332 N.C. 483, 424 S.E.2d 397 (1992) (history of lying goes to credibility rather than competency).

We are not unmindful of the troubling aspects of children testifying in court, particularly where a child is called upon to testify against a parent or the perpetrator of sexual abuse. Our courts have long been confronted with this issue, and various mechanisms have been developed to protect both the mental health of the child and the due process rights of those against whom the child might testify. A parent's right to confront witnesses in an abuse and neglect hearing has been found to have been protected where a mother was removed from the courtroom during the child's testimony but her counsel was present for the child's testimony and was afforded cross-examination. *Matter of Barkley*, 61 N.C. App. 267, 300 S.E.2d 713 (1983). In *Matter of Stradford*, 119 N.C. App. 654, 460 S.E.2d 173, *disc. review denied*, 341 N.C. 650, 462 S.E.2d 525 (1995), the testimony of two young girls by closed circuit televison was held sufficient to protect the confrontation rights of a juvenile accused of sexually assaulting them, where there was a showing that the children's testimony in the presence of the accused would have been harmful to them.

Because the trial court applied an erroneous legal standard in denying respondent father's request to call the children as witnesses, we must reverse the adjudication order in this case and remand the matter to the District Court for a new hearing at which the competence of the children to testify, should they be called as witnesses, shall be determined in accordance with G.S. § 8C-1, Rule 601. In the event the children's mental condition does not render them incompetent to testify, and they are called as witnesses, the trial court shall take appropriate measures to mitigate, insofar as possible, any harmful effects to them of being required to testify.

Reversed and remanded.

Judges WYNN and HUNTER concur.