DULL *v.* STATE OF INDIANA.

[No. 30,124.   Filed March 1, 1962.   Rehearing denied
April 2, 1962.]

*Clarence E. Benadum, Ralph V. Cecil, Frederick F. McClellan* and *Benadum, Cecil, McClellan & Conrad,* of Muncie, for appellant.

*Edwin K. Steers,* Attorney General, *Gene Williams,* Prosecuting Attorney, 46th Judicial Circuit, *Dick Clapp,* and *James J. Jordan,* Deputy Prosecuting Attorneys, 46th Judicial Circuit, for appellee.

ARTERBURN, J.—The appellant was found guilty of murder in the first degree after trial and upon an indictment reading as follows:

> "The Grand Jury of the County of Delaware for the January Term, 1961, being duly sworn, empaneled and charged in the name and upon the authority of the State of Indiana upon their oath charge and present that Walter G. Line and Jay L. Dull, on or about the 22nd day of December, 1960, at and in the County of Delaware and in the State of Indiana, did then and there unlawfully and feloniously kill and murder one James J. Tricker, who was then and there a human being, in the perpetration of robbery by then and there unlawfully, feloniously, forcibly, by violence and putting said James J. Tricker in fear, take from the person and possession of the said James J. Tricker two wrist watches of the value of Thirty Dollars ($30.00) and an amount of lawful currency of the United States of America to the extent and value of which is to the Grand Jury unknown, which was then and there the property of said James J. Tricker; and that said Walter G. Line and Jay L. Dull, in the commission of said robbery did then and there unlawfully and feloniously strike and beat the said James J. Tricker on the head with a certain deadly weapon used as a bludgeon, to-wit: a sawed-off shot gun which the said Jay L. Dull had and held in his hands and as a result of said blow and said beating aforesaid that said James J. Tricker on said day and date died, contrary to the form of statute made and provided

in such cases and against the peace and dignity of the State of Indiana.

> /s/ Gene Williams
> Gene Williams Prosecuting Attorney 46th Judicial Circuit Of the State of Indiana.

A true Bill

> /s/ C. Cree Cable
> Foreman of the Grand Jury."

The first contention made on this appeal is that the court erred in refusing to give the appellant's tendered instructions numbered 3 and 4. Instruction number 3 informed the jury that where the offense charged consists of different degrees, the jury may find the defendant not guilty of the degree charged and guilty of any degree inferior thereto. (Burns' §9-1816) Tendered instruction number 4 defined murder in the second degree and also manslaughter, and tendered forms of verdict for each of such offenses.

The question then presented is: whether second degree murder and manslaughter are offenses included in a charge of homicide committed in the perpetration of rape, arson, robbery or burglary. On request, should the jury be so instructed? The statute (Burns' §§9-1816 and 9-1817) provides in substance that where an offense under the statute consists of different degrees, a defendant may be found guilty of any lesser degree than that charged, and in all other cases where the offense is not graduated in degrees by the statute, a defendant may be found guilty of any offense necessarily included therein. The law in this respect is examined more fully in *Barker* v. *State* (1958), 238 Ind. 271, 150 N. E. 2d 680. Upon reading the statute (Burns' §10-3404) it will be found that

murder in the second degree consists of homicide with malice, *but without premeditation.* The statute defining murder in the first degree reads as follows:

> *"Murder—First degree—Penalty.* — Whoever purposely and with premeditated malice, or in the perpetration of or attempt to perpetrate a rape, arson, robbery, or burglary, kills any human being, is guilty of murder in the first degree, and on conviction shall suffer death or be imprisoned in the state prison during life. [Acts 1941, ch. 148, §1, p. 447.]"

By reference to the indictment in this case it will be noted that the defendant was not charged with *premeditated murder.* There are no allegations of premeditation in the indictment. The charge, therefore, is based upon the latter portion of the statute, which does not require the element or proof of premeditation, if the homicide is committed in the perpetration of robbery or the other felonies named in the statute. In *Mack* v. *State* (1932), 203 Ind. 355, 370, 180 N. E. 279, 283, 284, 83 A. L. R. 1349, we said:

> "When the facts prove the allegations of an indictment which charges the crime defined by the second sentence of §2412, *supra,* they prove first degree murder, and where, as here, there is no evidence adduced which proves anything but murder in the perpetration of a robbery, the court is not required to instruct the jury on second degree murder or manslaughter."

This statement was reiterated and approved in *Swain* v. *State* (1938), 214 Ind. 412, 415, 15 N. E. 2d 381, 383. In *Hawkins* v. *State* (1941), 219 Ind. 116, 125, 37 N. E. 2d 79, 83, this court said:

> "Appellant tendered 28 instructions, all of which were given except two. By these he sought

to have the jury instructed that under the indictment for murder while perpetrating a robbery, he could be convicted of murder in the second degree, manslaughter, or involuntary manslaughter. (Cases cited) The reason is found in the fact that neither premeditation, intent to kill, nor malice is a necessary element of the crime charged. This was long ago decided in *Stocking* v. *State* (1855), 7 Ind. 326. The instructions were properly refused." See also: *Witt* v. *State of Indiana* (1933), 205 Ind. 499, 185 N. E. 645.

The appellant cites *Bissot* v. *The State* (1876), 53 Ind. 408, wherein the defendant on appeal objected to instructions which defined murder in the second degree and manslaughter when he was found guilty on a second count charging murder committed in the perpetration of burglary. An examination of that case shows, however, that he was also charged at the time in another count with murder in the first degree involving premeditation. There is nothing inconsistent with the statements in that case with the law here enunciated. Where murder in the first degree involving premeditation is charged, it is proper for the court to instruct on murder in the second degree and manslaughter. The cases in that respect are cited above. We find no error in the court's refusal to give the instructions tendered by the appellant.

Finally, the contention is made that prejudicial error occurred in the closing argument by the prosecuting attorney. The appellant at the time made no objections to the remarks of the prosecuting attorney and did not ask the court to instruct the jury to disregard them or claim any prejudicial error in the respect now urged. The remarks consisted mainly in

stating to the jury that if the defendant was allowed
to escape it would invite—

> ". . . every hood in the State of Indiana into our
> home . . . everybody all over this state will know
> that you just won't be sent to the electric chair
> in Delaware County . . . What we must do is set
> an example in Delaware County that we are
> going to protect the people in this County, their
> lives and their liberty, and put people on notice
> here and all other places, that if you come to
> Delaware County and kill somebody, get ready
> for this final and complete and ultimate pen-
> alty."

Although there may be some question about the
temperateness of the remarks, no objections were
made thereto at the time. A party may not sit
idly by and make no objections to matters he
might consider prejudicial, awaiting the out-
come of a trial, and thereafter raise such question for
the first time. *Gamble* v. *Lewis* (1949), 27 Ind. 455,
85 N. E. 2d 629; *Kern* v. *Bridwell* (1889), 119 Ind.
226, 21 N. E. 664.

The alleged misconduct is presented by affidavits
signed and sworn to by the appellant and made a part
of the motion for a new trial. They are not presented
to this court by any bill of exceptions. Rule 1-15 of
this court provides for affidavits being filed with
motions for a new trial, but this court has limited the
use of such affidavits in cases where it is not possible
to obtain a bill of exceptions for that purpose. The
use of the affidavits is primarily for the purpose of
proving facts that took place outside the presence of
the court. In *Nix* v. *State* (1960), 240 Ind. 392, 397,
166 N. E. 2d 326, 328, we said:

> "Under Rule 1-15 of this Court affidavits may
> be used to supply facts not ocurring on the voir
> dire examination or facts which occurred outside

the knowledge of the court and which normally are not included in or cannot be shown by a bill of exceptions. Such affidavits, however, do not and cannot cover the voir dire examination."

The same principle applies with reference to events happening during an argument before the jury. This is not a case where there is any showing that ■ it was impossible under the circumstances to make objections and have a bill of exceptions prepared and filed covering the matters that occurred in the presence of the court. *McCoy* v. *State* (1960), 241 Ind. 104, 170 N. E. 2d 43; *Choen* v. *The State* (1882), 85 Ind. 209; *Powers* v. *State* (1882), 87 Ind. 144; *Jacoby* v. *State* (1937), 212 Ind. 465, 8 N. E. 2d 978.

The appellant has failed to present any question with reference to misconduct on the part of the State during the oral argument before the jury.

The judgment of the trial court is affirmed.

Achor, C. J., and Bobbitt and Landis, JJ., concur.

Jackson, J., dissents with opinion.

## DISSENTING OPINION

JACKSON, J.—The majority opinion discusses adequately, determines correctly, adversely to the appellant, on the doctrine of stare decisis, the questions relative to instructions raised in the case at bar. I point out, that one who perpetrates a murder with malicious premeditation, pursuant to a carefully thought out, coldly calculated and executed plan is entitled to instructions on murder in the second degree and voluntary and involuntary manslaughter, while one who kills, even accidently, in the attempt or consummation of one of the proscribed offenses is denied such instructions. The distinction is illogical.

Appellant also contends that prejudicial error occurred in the closing argument by the prosecuting attorney. In view of the question raised, the entire statement as embraced in the motion for a new trial is set out in full below as follows:

"She (referring to the wife of the victum [victim]) is pregnant with with (sic) her husband gone . . . We have tried several murder cases. We are starting another one a week from Monday. None of them are this bad. There can be nothing worse than this one. This is as bad as you can get; this is deliberate and cold blooded snuffing out of some innocent person's life for money to go out and drink beer on . . . A continued rampage of crimes and felonies from that time forward. Finally they are caught down here on [one] night. Thay [they] had to shoot them to catch them. There is no mercy here. We qualified you folks in respect to the death penalty because something must be done. Unless something is done—if theses [these] people are allowed to escape this henious [heinous] offense we are inviting everey [every] hood in the State of Indiana into our home. If these people don't go to the electric chair nobody will ever go to the electric chair— everybody all over this state will know that you just won't be sent to the electric chair in Delaware County. You cant' [can't] do anything bad enough to get sent there in Delaware County. They are here now and they are watching . . . Criminal trials, ladies and gentlemen, are many times distinguished by fireworks, numerous objections and battles. The tide shifts back and forth across the court room. First one side and then the other, like a chess game. This is not such a trial. The defense had no pieces to play with here. There is no defense. They knew it. They tried the case in that light. They reconized [recognized] that the only possible way—the only possible defense of either of these two cases is that in some how or other talk the jury, browbeat the jury, into protecting a couple of confessed killers—they are nothing but that—they confessed to you under oath right here on the

stand that they deliberately set out and took a man's life just take his money—they hadn't been out of the penitentiary 90 days either one of them when they did it . . . That's why we need the death penalty in this case. Even now as we stand day after day hearing it there is evidence, as Mr. Benadum alluded to himself Captain Thomas and some others are now out trying to find the next one. Who's next—is it you or me? Protection is the essential quality here. We must override the individual interests of Mr. Line and Mr. Dull. What we must do is set an example in Delaware County that we are going to protect the people in this county—their lives and their liberty, and put people on notice here and all other places, that if you come to Delaware County and kill somebody, get ready for this final and complete and ultimate penalty."

The majority opinion, citing civil cases as authority, makes the point that a duty devolved upon the appellant or his counsel to promptly object to the alleged improper comment, and to make a record thereof at the time, and that failure to do so promptly constitutes a waiver of the objectionable statement. It is, I think, a matter of common knowledge among trial lawyers that the situation delineated here presents one of the most difficult facets in the defense of a criminal case. Often, as here, there is feeling and prejudice concerning the defendant's conduct and his right to a fair trial, etc. Under such circumstances whatever is done in behalf of the defendant by way of objection tends to antagonize the jury.

The matter in issue was, in my opinion, properly brought to the attention of the trial court, and is here in the record by the motion for a new trial and its inclusion in the assignment of errors.

It is further my opinion that, in this case, any reasonable man must inevitably conclude that the closing

arguments of the prosecuting attorney improperly appealed to the passions, prejudices and emotions of the jury by remarks concerning matters outside the record and not germane to the issues before the jury. In such case a pressing duty devolved upon the trial court sua sponte to admonish the jury to disregard the inflamatory and prejudicial remarks of the prosecuting attorney, and that duty was paramount to any rule of procedure that attempts to place that burden upon the defendant.

The judgment of the trial court should be reversed, and the cause remanded with instructions to grant appellant's motion for a new trial.

NOTE.—Reported in 180 N. E. 2d 523.