FORD *v.* STATE OF INDIANA.

[No. 30,779. Filed September 22, 1967.]

*Lewis Davis,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, and *Raymond I. Klagiss,* Deputy Attorney General, for appellee.

JACKSON, J.—This case comes to us by way of an appeal from a judgment of conviction rendered by the court against the appellant in a trial to the court. Appellant and his co-defendant, Michael George Snow, were charged by affidavit with the crime of First Degree Burglary. Appellant's co-defendant was acquitted, and appellant was, on January 29, 1965, sentenced to the Indiana State Reformatory for a period of not less than ten (10) years nor more than twenty (20) years and costs.

Appellant was, prior to and during trial, represented by pauper counsel appointed by the court. Following appellant's conviction his trial counsel filed a Motion for New Trial, which, omitting formal parts and signature, reads as follows, to-wit:

"Comes now the Defendant in the above entitled cause and moves the Court for a new trial for the following reasons:

"1. That the decision of the Court is not sustained by sufficient evidence.

"2. That the decision of the Court is contrary to law."

Appellant's Motion for New Trial was thereafter overruled. Following the overruling of appellant's motion appellant requested appointment of counsel for the purpose of taking an appeal. The court thereupon appointed another lawyer as pauper attorney for the purpose of perfecting an appeal for appellant.

Thereafter present counsel filed the following Assignment of Errors, which in pertinent part reads as follows:

"1. That the Court erred in overruling the Appellant's Motion for a New Trial."

The grounds for this appeal may be narrowed to two issues:

1. Whether the conviction was sustained by sufficient evidence; and,

2. Whether appellant was deprived of constitutional rights by being coerced into waiving a trial by jury after he had stated that he wanted a jury trial and why.

We shall discuss only briefly issue number one. While there is conflict in the evidence, the record discloses appellant had four different versions relating to his possession of the stolen goods. It is the duty of the trier of the facts to determine the weight of the evidence and the credibility of the witnesses, and unless there is shown a clear abuse of discretion, this court, on appeal, does not review those

matters. In view of the decision we must reach in this case we need not here further consider issue number one.

Issue number two presents a far more serious question. Appellant contends that he was coerced by the trial court into waiving his constitutional right to trial by jury. At the beginning of the trial appellant asked the court for a change of venue, and after denial of the change of venue, asked for a jury trial. Although pauper counsel, appointed by the court to represent appellant, was in court at the time the requests were made, the appellant himself orally made the requests to the court. The record shows the following exchanges:

"THE COURT: This is CR-251, the State of Indiana versus Glenn Ford and Michael George Snow charged jointly with First Degree Burglary.

"MR. MAY: Judge, I have talked to Mr. Ford again this morning, and I'm still not certain in my own mind what he really wants to do. You tell the Judge what you want to do now, Ford.

"DEFENDANT FORD: Judge, I would like a change of venue because I don't feel people can get a fair trial in this county, and I feel this county is prejudiced against me because I have a past record, and I have been informed that I was going to get ten to twenty years if I don't take this county. It was a crime which I haven't committed. And, Your Honor, I'm going, I just believe, I would like to have a change of venue to another county, or another court, or something.

"THE COURT: All right, show the oral motion for change of venue made in person by the defendant with the assistance of counsel denied.

"MR. McMASTER: At this time, Your Honor, the defendant Snow informs me that he has the same request and wants a change of venue from the county or, if not that, a change of venue from the judge.

"THE COURT: Show the same ruling. Show them denied in each instance, the change of venue from the county and the change of venue from the judge. All right, are you ready, Phil?

"MR. MELANGTON: Yes, Your Honor.

. . . . .

"DEFENDANT FORD: Your Honor, I would like to have a jury trial.

"THE COURT: All right, but let me give you a little word of warning of something you may not know about. How old are you?

"DEFENDANT FORD: Twenty-two.

"THE COURT: Whenever a case is tried in this Court and the defendant is of your age, and depending upon his record of past offenses, if he is found guilty, there is a certain tendency to review his case on a presentence investigation and then decide what he should or shouldn't receive in the form of a sentence. However, when a case is tried to a jury and twelve people over in that box come in, if they find you guilty, I never disturb their verdict. What they say you are going to get is what I give you. Now, with that in mind, is a jury trial what you want? It is your constitutional right, I don't want to confuse you about that at all. If you say you want a jury trial, why, you will get one.

"DEFENDANT FORD: I will have trial here, then.

"THE COURT: What did you say?

"DEFENDANT FORD: I will have trial here.

"THE COURT: I can't hear you.

"DEFENDANT FORD: I will have trial here, sir.

"THE COURT: All right, be seated. Go ahead Mr. Melangton."

No objection was made to the comments of the court at the trial, nor was the issue raised in the Motion for New Trial. The pauper attorney, appointed to perfect this appeal, raised the issue for the first time in the argument section of his brief on appeal.

The State contends that issue is not properly before this court because it was not raised by the Motion for New Trial and because no timely objection was made to the comments of the trial judge. It is the contention of the State that appellant waived the error in question under Indiana Supreme Court Rule 2-6, which provides in part as follows:

"In all cases in which a motion for a new trial is the appropriate procedure preliminary to an appeal, such mo-

tion shall be filed and shall separately specify as grounds therefor each error relied upon however and whenever arising up to the time of filing of such motion, and an assignment of error on appeal to the effect that the trial court erred in overruling said motion shall be the only means of raising said asserted errors on appeal. In all other cases and in cases of asserted errors arising subsequent to the filing of the motion for a new trial, such asserted errors may be assigned independently."

The State further argues that the alleged error occurred prior to the filing of the Motion for New Trial, and hence should have been included in the motion, and that the appellant cannot now argue on appeal alleged errors which should have been, but were not, included in the motion for new trial, since failure to do so does not save such alleged errors for appeal. In support of its theory the State cites: *Bays* v. *State* (1959), 240 Ind. 37, 159 N. E. 2d 393; *Hutton* v. *State* (1965), 246 Ind. 589, 207 N. E. 2d 816.

In the *Bays* case, *supra,* the writer hereof dissented. In that case this Court refused to consider specifications in the appellant's Assignment of Errors because they had not been assigned as causes in the Motion for New Trial. The assigned errors not considered in the *Bays* case dealt with the trial court's rulings on suppression and admissibility of evidence, the giving and failure to give various instructions, and the entering of judgment on the verdict of the jury. None of those issues involved actual misconduct on the part of the trial judge, as in the case at bar where the court improperly induced appellant to accept trial by the court instead of by jury as the appellant had requested.

The *Hutton* case, *supra,* holds that the question of the admissibility of a blood sample allegedly illegally obtained could not be raised for the first time on appeal. In that case no objection was interposed by the appellant to the introduction of the blood sample at the trial, and the undisputed evidence was that the appellant had voluntarily submitted to the blood

test. For that reason the *Hutton* case was not directly in point here.

In further support of its position that appellant waived error by failing to timely object to the remarks of the court, the State cites *Dull* v. *State* (1962), 242 Ind. 633, 180 N. E. 2d 523, and *Callahan* v. *State* (1964), 246 Ind. 65, 201 N. E. 2d 338. The writer of this opinion dissented in the *Dull* case, *supra*. In the *Dull* case it was the prosecuting attorney who made the prejudicial remarks. That can be and is easily distinguished from the case at bar where the court deliberately defrauded the defendant of his rights. The situation in the *Dull* case as pointed out in the dissent was difficult enough, but when as here the court is the one who applies the pressure, the defendant is helpless to counteract the actions of the court as whatever is said or done in his behalf further antagonizes the court.

In the *Callahan* case, *supra,* appellant charged he was brought into court shackled and alleged the court failed to properly supervise the decorum of the court room. Not only did the appellant there fail to object to the alleged misconduct at the trial, he also failed to have the misconduct made a part of the record. In the case at bar, the comments of the court and its actions, both of which are complained of, are fully set forth in the record.

To preserve order and stability in appellate practice, procedural rules ordinarily must be observed by litigants and may not be ignored by reviewing courts. The primary reason for requiring parties to present all possible grounds for appeal in the motion for new trial is to avoid the necessity of an appeal by giving the trial judge a chance to review the issues complained of and to correct the errors. Timely objections to errors at the trial are required to prevent litigants from deliberately using the errors to get a second trial in the event the first trial goes against them.

In civil cases procedural rules are strictly observed, but in criminal cases it is more important that justice be done than to strictly abide by the rules of procedure. As this Court said in *Wilson* v. *State* (1943), 222 Ind. 63, 78, 51 N. E. 2d 848:

". . . in a case involving an appellant's life or liberty we may not ignore prejudicial errors affecting his constitutional rights, when, as here, they are clearly and ■ adequately presented in appellant's brief with supporting bill of exceptions. The procedural rules that would prevent their consideration must give way to the fundamental principles of due process."

Although the *Wilson* case was decided before Rule 2-6 contained the language relied upon by the State, the above rule remains valid. The Supreme Court of the United States ■ has defined waiver to be "an intentional relinquishment or abandonment of a known right or privilege." *Johnson* v. *Zerbst* (1938), 304 U. S. 458, 464, 82 L. Ed. 2d 1461, 58 S. Ct. 1019. See: *Brookhart* v. *Janis* (1966), 384 U. S. 1, 16 L. Ed. 2d 314, 86 S. Ct. 1245.

Whether an intelligent waiver has been made depends upon the particular facts and circumstances of each case.

The facts in the present case clearly show that the appellant did not intelligently waive his constitutional right to a jury trial. The court had a duty to appoint a competent pauper counsel to advise the appellant of his rights and suggest the best possible strategy to follow at the trial. If the trial court had a policy of weighing the finding of presentence investigations to determine the sentence to be imposed in cases tried to the court but not in cases tried to a jury, it was the responsibility of counsel, not the court, to so inform his client. The remarks of the trial court clearly implied that the appellant's chances of getting a light sentence were much greater if he did not insist on a jury trial. Since a change of venue had already been denied, the appellant had no choice but to stand trial to the court in order to get a break. The pauper counsel should have objected to the court's remarks, but his silence can be justified under the circumstances.

In the present case we have no choice but to reverse and remand for a new trial because of the misconduct of the trial judge. If we did not reverse, the appellant would still ■ have the remedy of a federal habeas corpus proceeding in which his procedural default would not alone preclude consideration of the claim. *Henry* v. *Mississippi* (1965), 379 U. S. 443, 13 L. Ed. 2d 408, 85 S. Ct. 564. Also see: *Fay* v. *Noia* (1963), 372 U. S. 391, 9 L. Ed. 837, 83 S. Ct. 822.

The case at bar is not unlike *Fay* v. *Noia, supra*. In that case the Court held that the defendant's failure to appeal could not be deemed an intelligent and understanding waiver of his right to appeal because the state trial judge in imposing sentence stated that the defendant's past record and his involvement in the crime almost led the judge to disregard the jury's recommendation against a death sentence. The defendant was thus led to believe that if he appealed he would run a substantial risk of electrocution. The conviction was set aside and the defendant was ordered to be discharged from custody unless he was given a new trial. In both the *Noia* case and the case at bar the defendants were duped into failing to exercise their constitutional rights because of remarks made by the trial judge.

The judgment below is reversed, and the cause is remanded to the trial court with instructions to sustain appellant's motion for a new trial.

Hunter, C. J., and Lewis, J., concur.

Mote, J., concurs in result.

Arterburn, J., dissents with opinion.

## DISSENTING OPINION

ARTERBURN, J.—I dissent on the ground that appellant's counsel did not raise the right to a jury trial in his motion for a new trial, and we have no issue on that point before us on appeal.

NOTE.—Reported in 229 N. E. 2d 634.