MARTIN *v.* STATE OF INDIANA.

[No. 31122. Filed January 31, 1969. Rehearing denied March 25, 1969.]

588

*John S. Brumfield* and *Donald D. Chiappetta,* of Muncie, for appellant.

*John J. Dillon,* Attorney General and *Murray West,* Deputy Attorney General, for appellee.

DeBRULER, C. J.—Appellant was convicted of assault and battery with intent to gratify sexual desires on a four year old girl. The charge was by affidavit and the trial was by the court without a jury. Appellant charges the trial court erred in certain procedural matters, in allowing the five year old victim to testify and finding venue on insufficient evidence.

Appellant's brief alleges error on the first point in two parts: (1) In the absence of the appellant, his counsel made his third motion for continuance of the trial which the trial court granted on the condition that no further request for continuance or any dilatory motion either by way of change of judge or change of venue from the county be made. (2) The trial court granted a motion by appellant's counsel for a jury trial but the trial took place without a jury.

Neither of these two arguments were included in the appellant's motion for a new trial. Errors occurring prior to the filing of such motion must be included in the motion for new trial in order to be reviewable on appeal. *Denton* v. *State* (1965), 246 Ind. 155, 203 N. E. 2d 539.

As an exception to this rule, appellant cites *Ford* v. *State* (1967), 248 Ind. 438, 229 N. E. 2d 634, where this Court reversed a conviction for an error by the trial court which was not alleged in the motion for new trial, saying "In civil cases procedural rules are strictly observed, but in criminal cases it is more important that justice be done than to strictly abide by the rule of procedure." But in that case the injustice was great, being misconduct by the trial judge himself in depriving the defendant of his constitutional right to a jury trial. In this case there is no hint that there was any misconduct on the part of the trial judge; that appellant was *involuntarily* absent from the proceedings; that he objected to going to trial without a jury; that a change of venue was

needed, sought or refused. Indeed, there is no showing that appellant was harmed in any way. There is nothing in this case that warrants an extension of the rule in the *Ford* case.

Appellant's second contention is that the trial judge was guilty of a manifest abuse of discretion in qualifying Wilma Jean Haley, age five, as a competent witness to testify in this case.

The pertinent statute reads:

"Who are incompetent. . . . The following persons shall not be competent witnesses:
. . .

"Second: Children under ten (10) years of age, unless it appears that they understand the nature and obligation of an oath." (Burns' Ind. Stat. Anno. § 2-1714)

Whether or not the statutory presumption against the competency of Wilma Jean Haley was overcome was to be determined by the trial court in light of her answers to questions designed to probe her understanding of the "nature and obligation of an oath." Neither the statute nor the cases set out a precise test that must be followed verbatim in determining if such understanding exists. The complete voir dire examination, which was the basis of the trial court's ruling that Wilma Jean Haley was a competent witness, is here set out:

*"By Mr. Foust:*
Q. This is Judge Osburn sitting up there. I will have questions to ask you. And will you answer them loudly enough for your mother and me to hear you?
A. (Wilma Jean Haley shakes head in the affirmative.)

*By the Court:*
Q. How old are you, Wilma Jean?
A. 5.

Q. Ordinarily, when people come into court, we ask them to tell the truth, the whole truth and nothing but the truth. Do you understand you have got to tell the truth?
A. Yes.

Q. You understand every word you give to the Court must be the truth?

A. Yes.

Q. Are you willing to tell the truth?

A. Yes.

Q. You understand here is a man whose liberty is at stake. You are willing to tell the truth and, to put it bluntly, you will tell the truth?

A. Yes.

And on cross-examination by Mr. Thomas Wright, attorney for Defendant, the witness Wilma Jean Haley testified as follows:

*By Mr. Wright:*

Q. My name is Tom. Do they call you Wilma or Jean?

*By Mrs. Haley, mother of Wilma Jean Haley:*

A. Jean.

*By Mr. Wright:*

Q. Have you ever told a lie?

A. I don't know.

Q. You don't know?

A. No.

Q. Have you ever been spanked for telling a fib?

A. No.

Q. Never been spanked?

A. Sometimes.

Q. You do tell a fib once in a while?

A. Yes.

Q. Do you have many little friends you play with? Do you have many little friends you play with?

A. No.

Q. Do you have many little friends you play with?

A. Yes.

Q. You do?

A. Yes.

Q. Do you have? What are their names?

A. Mason.

Q. You have—You play games?
A. Yes.
Q. What kind of games do you play?
A. I don't know.
Q. You don't know?
A. No.
Q. You play with—You have dolls you play with?
A. Yes.
Q. What is your dolly's name?
A. Heidi.
Q. Heidi?
A. Yes.
Q. Do you have any other little friends you play with?
A. Same ones.
Q. Do you have an imaginary friend?
A. No.
Q. Do you all the time tell the truth?
A. Yes.
Q. You never tell a fib?
A. No.
Q. Yes or no?
A. No.

*By Mr. Wright:*

Your Honor, I am going to object. I don't think the answers elicited from Wilma Jean show completely that she knows to tell the truth.

*By the Court:*

I am going to permit her to testify, but to within the scope of the crime. She will have the liberty to tell what happened. If she can't, the Court will strike it."

The voir dire included questions put by counsel as well as those by the court. There is no reason in law or logic why the trial court should consider only the answers to its own questions. The nature of the question is determinative, not the author of the question. As long as the question

seeks to determine to what extent the child understands "the nature and obligation of an oath" and it occurs as an integral part of the court's inquiry prior to a ruling on the competency of the child, it is a proper part of the voir dire.

On the other hand, questions put after the trial court's ruling, especially questions on the merits, cannot be used to undermine the ruling of competency. They go to the credibility of the witness and influence the weight to be given to that testimony by the trier of fact. The qualification of the child as competent does not imply she will be a model witness, nor does it imply that her testimony will be supported by the other evidence, nor does it imply she will be able to faithfully recall the events which occurred when she was four years old. None of those issues bears on her *competency* as a witness. An adult witness is not rendered incompetent because he makes inconsistent statements or has a suspected faulty memory. The statutory presumption of incompetence is overcome when the child demonstrates an understanding of "the nature and obligation of an oath" and there is no further test.

On the basis of the above voir dire examination the trial court ruled Wilma Jean Haley to be a competent witness. This ruling will not be reversed by this Court unless it is shown that the ruling is a manifest abuse of discretion. *Martin* v. *State* (1958), 239 Ind. 174, 154 N. E. 2d 714; *Shipman* v. *State* (1962), 243 Ind. 245, 183 N. E. 2d 823. If there is some evidence in the record of the voir dire examination from which the trial court could have inferred that Wilma Jean Haley understood "the nature and obligation of an oath" then this Court must affirm the ruling. There is a presumption in favor of the trial court's ruling and the burden of overcoming that presumption rests on the appellant.

It has been argued that in order to show that the child understood "the nature and obligation of an oath" it must be shown that: (1) the child understood the difference between

telling the truth and telling a lie; and, (2) the child had knowledge that she would be punished if she told a lie.

(1) There is some evidence that Wilma Jean understood the contrast between "telling the truth" and "telling a fib." Consider the last three questions by appellant's counsel:

"Q. Do you all the time tell the truth?
A. Yes.
Q. You never tell a fib?
A. No.
Q. Yes or no?
A. No."

Note also that the court's questions were all concerned with her telling the truth and counsel's questions all emphasized lying.

(2) There is some evidence that Wilma Jean knew she was under some compulsion to tell the truth. Requiring that she have "knowledge she would be punished if she lied" is phrasing the test in too narrow a way. It is a fact she would be punished if she lied? By whom? Is a guilty conscience a punishment By whom? Consider the second and third question by the trial court:

"Q. . . . Do you understand you have got to tell the truth?
A. Yes.
Q. You understand every word you give to the Court must be the truth.
A. Yes."

The voir dire examination in *Shipman* v. *State, supra,* is very similar to the one in this case. This Court found the following voir dire examination sufficient to qualify the seven year old girl:

" 'Q. Do you tell lies?
A. No.

. . .

Q. Why don't you tell lies? Don't get scared.
We are just talking to you. No one is going to hurt you.
Do you know why you don't tell lies?
A. No.

. . .

Q. Do you know you are supposed to tell the truth?
A. Yes.

Q. And you are not supposed to tell lies?
A. No.

. . .

Q. Would you ever tell a lie?
A. No.

Q. Do you know that when you are asked to tell something
in court that you are asked to tell just the truth and
not lie a bit, you know that?
A. Yes.

. . .

Q. Do you ever promise to do anything? Do you know what
a promise is?
A. Yes.

. . .

Q. . . . Do you know what it means to keep your promise?
Don't make a promise and not keep it, do you know
that? Do you always keep your promises?
A. Uhuh.

Q. Would you promise me something?
A. Uhuh.

Q. Would you promise me to tell the truth today?
A. Yes.

Q. And you would not tell a lie?
A. No.

Q. And you would keep your promise to me?
A. Yes.' "

The fact that there are apparent inconsistencies in some of
Wilma Jean's answers is not decisive in this Court. *Martin* v.
*State, supra.* The bare transcript does not reveal to us that

cluster of visual and aural clues collected under the general term "demeanor" which are discernible to the trial court, *e.g.*, the different voice inflections and speech rhythms of question and answer, the nuances and emphasis in wording, the rapidity of the questions, the facial expressions, the firmness of the answers, the rapport between the questioner and Wilma Jean —in other words, the total context within which the questioning took place. Those considerations are decisive as to whether there were any real inconsistencies on the part of Wilma Jean. They are the reasons it is within the discretion of the trial court to resolve such inconsistencies and to determine on which part of the testimony he is to rely.

Looking at the complete voir dire examination, and only at it, there is some evidence from which the trial court could have inferred the statutory presumption was overcome. We cannot avoid the discipline imposed by our limited scope of review, by saying the statute specifically creates a presumption of incompetency that must be "clearly overborne" before a child under ten may be considered competent to testify. First, the statute says nothing at all, either specifically or otherwise, about the standard of proof required to overcome the statutory presumption. Second, even if the statute did specify a standard of proof, it is to be applied by the trial court, not this Court. The presumption we are to deal with is the one in favor of the trial court's ruling. Admittedly this voir dire was far from what we would consider a model examination. But the proof required to overcome the presumption of validity of the trial court's ruling is that there was no evidence from which the trial court could have found Wilma Jean Haley competent as a witness. Only then can this Court reverse the trial court's ruling as a manifest abuse of discretion. That proof is lacking in this case.

Appellant's last argument is that there was insufficient evidence to sustain a finding of venue. In reviewing for sufficiency

this Court must construe the evidence most favorably to the State, *Fisher* v. *State* (1966), 247 Ind. 529, 219 N. E. 2d 818, and will not reverse if there is some evidence in the record to support the finding of the trier of fact, *Coach* v. *State* (1968), 250 Ind. 226, 235 N. E. 2d 493. The evidence so construed shows this: The defendant left the Haley residence with Wilma Jean Haley sometime between 3:30 and 4:30 p.m. While they were gone the appellant stopped to buy her a new dress, new panties, a soft drink and a hamburger. He returned her to her home around 7:00 p.m. and Wilma Jean was taken to the emergency room of the hospital at 7:30 p.m. The police learned from the witness, Wilma Jean Haley, shortly after the assault that it had taken place in a field by some water and a lot of trees, near a white house with blue trim. She also said there was a hill overlooking the water. The next day the police took the witness out to Wagner Lake and she identified the gravel road off of Road 37, leading to Wagner Lake. She identified the evergreen trees at the Ellis house, which is white with a blue trim, as the place where they stopped the car. She told the police she thought her missing panties were in those trees. The Ellis house is on a hill overlooking the lake. Wagner Lake is in Grant County, the county where the trial took place.

Construing the evidence in favor of the State, we find there was some evidence to support the trial court's finding that the crime took place in Grant County.

Judgment affirmed.

Arterburn and Givan, JJ., concur; Hunter and Jackson, JJ., dissent with separate opinions.

### DISSENTING OPINION.

JACKSON, J.—I cannot agree with the conclusions reached in the majority opinion and dissent thereto.

Appellant was charged, by affidavit filed in the Grant Superior Court, with Assault and Battery with Intent to Gratify sexual desires. The trial court, without the intervention of a jury, found appellant guilty as charged. Pre-sentence investigation was ordered on March 31, 1966.

Thereafter, on April 5, 1966, the pre-sentence investigation report was filed, and the court being duly advised, rendered judgment on its previous finding, sentencing the defendant-appellant to imprisonment in the Indiana State Prison for not less than two nor more than twenty-one years.

April 25, 1966, appellant's Motion for New Trial was filed, such motion, omitting heading, formal parts, etc., contains the following grounds:

"1. That the Court erred in abusing its discretion by allowing an incompetent witness, the Haley child, age five (5) to testify.

2. That the Court erred in overruling the defendant's motion to suppress evidence with respect to statements made to the Police prior to his being informed of his Constitutional Rights.

3. That the finding of the Court is contrary to law.

4. That the finding of the Court is not sustained by the evidence.

5. That the finding of the Court is contrary to law and not sustained by sufficient evidence."

Appellant's Motion for New Trial was by the court overruled on November 29, 1966.

The praecipe for appeal was filed on December 7, 1966.

Appellant's Assignment of Errors was filed in this Court on February 27, 1968, and omitting heading, formal parts and signatures, reads as follows:

"The Appellant says that there is manifest error in the judgment and proceedings in this cause in the trial Court, in this, to-wit:

1. That the Court erred in overruling Appellant's Motion for a New Trial. (Transcript page 10, lines 1-26).

2. That the Court erred in that its findings are contrary to law.

3. That the court erred in that its findings are not sustained by sufficient evidence in that the State failed to prove by any probative evidence the venue of the crime charged.

4. That the Court erred in overruling Appellant's Motion for a Finding of Not Guilty immediately after the State rested its cause in chief. (Transcript page 112, line 22, to page 113, line 9.)

5. That the Court erred in overruling Appellant's objection allowing the witness, Wilma Jean Haley, age five (5) years to testify in that she did not know to tell the truth or understand the nature and obligation of an oath. (Transcript page 49, lines 10-18.)

6. That the Court erred in that it abused its discretion by allowing an incompetent witness, Wilma Jean Haley, age five (5) years to testify as to occurrences that happened when she was three (3) years old. (Transcript page 49, lines 10-18.)

7. That the Court erred in failing to properly qualify the witness, Wilma Jean Haley, by showing that she knew the difference between truth and falsehold and that she knew punishment would follow if a falsehood was testified to. (Transcript page 47, lines 1 to page 49, line 8.)

8. That the Court erred in forcing and allowing defendant's attorney to waive a change of venue from the county or change of judge without the defendant being present, this violating the defendant's rights. (Transcript page 4, line 29 to page 5, line 5.)

9. That the Court erred in allowing defendant's attorney to file a Motion for a Jury Trial and sustaining same outside the presence of the defendant and then proceeding to try this cause without a jury thus depriving the defendant of his most basic constitutional right. (Transcript page 4, lines 17-27.)

For which errors, Appellant prays that judgment be in all things reversed."

From the evidence adduced at the trial it appears that on or about September 24, 1964, appellant who was on friendly terms with the Haleys, and apparently a rather frequent visitor at their home, stopped by their home in the late afternoon to see Mr. Haley. On being advised by Mrs. Haley that

her husband had not yet returned from work he continued to converse with Mrs. Haley. During this time Wilma Jean, then approximately four years of age appeared on the scene clad in a blouse and a pair of pants with a hole in them. Appellant asked permission from the mother, Mrs. Haley, to take the daughter and buy her some new clothes. Appellant had previously helped the family financially and the mother consented. Appellant and Wilma Jean left in appellant's automobile and were gone for a period of over three hours. The mother became worried and telephoned the police. Appellant and Wilma Jean returned just as the mother was returning home from calling the police. The child was in the house when the mother walked over to the car and spoke to appellant. Appellant and Mrs. Haley talked for several minutes, and then appellant gave her a dime to call the police to tell them the child was home.

After telephoning the police Mrs. Haley went home, spoke again with appellant, and then went into the house to see her daughter's new clothes. It was then she noticed the child had marks on her face and arms and her face had been scratched, like beard marks, she observed blood stain in the vaginal area. The mother then went back outside and started calling appellant names and hitting him with her fists and accusing him of hurting her daughter. Appellant told her she was crazy, got in his car and left, and Mrs. Haley called the police.

In his Motion for New Trial and in his Assignment of Errors appellant alleges numerous grounds for reversal. In view of the determination reached in the case at bar I need and will discuss only appellant's allegation that the trial court erred in permitting the alleged victim to testify at the trial in behalf of the State.

At the time of the alleged assault Wilma Jean was four and one-half years of age. At the time of trial she was almost six years old.

It is the appellant's contention that as the child was under the age of ten at the time of trial and that as disclosed by the record it was not properly demonstrated that she understood the nature and obligations of an oath and that she knew she should tell the truth and that she would be punished if she told a lie, it was error to permit her to testify. Appellant also contends the child was incompetent to testify to events that occurred when she was four and a half years of age and at a time approximately one and one-half years prior to trial.

By statute children, under ten years of age, are in this State presumed to be incompetent as witnesses. The applicable statute, Ind. Anno. Stat. § 2-1714 (1968 Repl.) reads in pertinent part as follows:

"Who are incompetent.—The following persons shall not be competent witnesses:

. . .

Second. Children under ten (10) years of age, unless it appears that they understand the nature and obligation of an oath."

There is, as yet, no clear test with which to determine whether a child under ten understands the "nature and obligation of an oath." However, prior decisions of this Court have indicated that it will be sufficient for the purposes of the statute if the child witness knows that he must tell the truth, and believes that he will somehow be punished if he tells a lie. *Shipman* v. *States* (1962), 243 Ind. 245, 183 N. E. 2d 823; *Morgan* v. *State* (1962), 243 Ind. 315, 185 N. E. 2d 15; *Martin* v. *State* (1958), 239 Ind. 174, 154 N. E. 2d 714.

Whether the child does understand the nature and obligation of an oath is a question to be decided by the trial judge, and this Court may only interfere with his decision where there is a clear abuse of discretion. *Shipman* v. *State, supra; Morgan* v. *State, supra; Martin* v. *State, supra; Tyrrel* v. *State* (1912), 177 Ind. 14, 97 N. E. 14.

In the case at bar the trial judge questioned the child in the following manner:

"Q. How old are you, Wilma Jean?
A. 5.
Q. Ordinarily, when people come into court, we ask them to tell the truth, the whole truth and nothing but the truth. Do you understand you have got to tell the truth?
A. Yes.
Q. You understand every word you give to the Court must be the truth?
A. Yes.
Q. Are you willing to tell the truth?
A. Yes.
Q. You understand here is a man whose liberty is at stake. You are willing to tell the truth and, to put it bluntly, you will tell the truth?
A. Yes."

It is apparent from the foregoing that, although the trial judge attempted to ascertain the child's willingness to tell the truth, it was never properly determined whether the child understood the difference between telling the truth and telling a lie. Moreover, on the basis of several answers given by the child to questions put to her by appellant's trial counsel, it does not appear that she did know the difference between telling the truth and telling a lie. The following excerpts from the transcript clearly illustrate that the child could not distinguish between telling the truth and telling a lie:

"Q. Have you ever told a lie?
A. I don't know.
Q. You don't know?
A. No."

On cross examination, the following testimony was illicited:

"Q. Do you know that man there?
A. No.

Q. You don't know him?
A. No.
Q. Are you now telling us the truth, Jean?
A. I don't know.
Q. You don't know? Do you remember my name?
A. No."

The record clearly discloses from the child's testimony that she was unable to distinguish between telling the truth and telling a lie, further she gave no indication of knowledge that she would be punished if she told a lie. That being so, the statutory requirement that children under ten years of age "must understand the nature and obligation of an oath" before being competent to testify has not been met. The statute specifically creates a presumption of incompetency that must be clearly overborne before a child under the age of ten may be considered competent to testify. In the case at bar a child not yet six was permitted to testify to events occurring when she was four and a half years of age. The presumption of incompetency was not overborne, on the contrary it is clearly apparent from the record by her answers to questions that she was indeed incompetent to testify and the action of the trial court in permitting her to be used as a witness constituted reversible error.

The judgment should be reversed and the cause remanded to the trial court with instructions to grant appellant's Motion for a New Trial.

DISSENTING OPINION.

HUNTER, J.—I respectfully dissent from the majority opinion in the case at bar because of my belief that the testimony of the prosecutrix was inadmissible and constitutes a reversible error.

Ind. Anno. Stat. § 2-1714 (1968 Repl.) provides that children under ten (10) years of age shall not be competent wit-

nesses unless it appears they understand the nature and obligation of an oath. Whether this five-year-old prosecutrix understood the nature and obligation of her oath is a question of fact within the discretion of the trial court. *Martin* v. *State* (1959), 239 Ind. 174, 154 N. E. 2d 714; *Tyrrel* v. *State* (1912), 177 Ind. 14, 97 N. E. 14. To say that the determination is within the trial court's discretion does not mean that the decision need not be supported by probative evidence.

"The use of the word 'discretion' in connection with the competency of a child as a witness is not entirely satisfactory. And the frequency with which the appellate courts have reversed the trial courts on the issue of competency demonstrates that if there is a true discretion, it operates in a very narrow field. What the decisions really mean is that *the trial court is called upon to decide a few questions of fact before it decides whether the child may testify,* that the decision is based not only upon statements made by the child gives as he makes his statements, and that when the trial court makes such preliminary findings of fact its decision should not be reversed unless the appellate court can see clearly that *the trial court has reached the wrong conclusion as to the facts or has applied an incorrect principle of law*. To say that a court has a discretion in such matters is akin to saying that in an action for damages for personal injuries the court has a discretion as to whether it shall find for the plaintiff or for the defendant.

In this connection see *Carlotz* v. *Gavin* (1945) 133 NJL 61, 42 A. 2d 461, wherein the court said: 'The adjudication as to capacity and responsibility . . . is to be made by the trial court. Its judgment is often said to be an exercise of judicial discretion. Whether that phrase properly describes the nature of the judicial act in admitting infant children as witnesses need not be determined. Whatever its nature may be, it is well settled that *the judgment will not be reviewed on error unless it is plainly shown to have been made without any evidence to support it."* (our emphasis) Annotation, 81 A. L. R. 2d 386, 402-03.

The decision by the trial court as to the competency of an infant witness might better be characterized as a limited discretion, and must be based on answers to certain questions of fact, and these answers must in turn be supported by the

evidence presented at the trial. *Artesani* v. *Gritton* (1960), 252 N. C. 463, 113 S. E. 2d 895. 81 A. L. R. 2d, *supra,* at 400.

To understand the obligation of an oath, an infant witness must understand that some adverse consequence may result from telling a known falsehood. *Martin* v. *State* (1959), 239 Ind. 174, 154 N. E. 2d 714; *Wheeler* v. *United States* (1895), 159 U. S. 523. Jurisdictions with a similar interpretation of this statutory requirement include: New York Code Cr. Proc. § 392 and *Olshansky* v. *Prensky* (1918), 185 App. Div. 469, 172 N. Y. S. 856; Texas Code Cr. Proc. § 38.06 and *Anderson* v. *State* (1921), 88 Cr. R. 307, 226 S. W. 414; Canada: *Rex* v. *Antrobus* (British Columbia, 1946), 2 D. L. R. 55; Bigelow, "Witness of Tender Years," 9 Crim. L. Q. 298 (March, 1967).

Some authorities have advocated a more relaxed test for determining the competency of an infant witness. E.g., see Notes, 32 Conn. B. J. 103 (March, 1958) and 38 N. D. Law. 95 (Dec., 1962). However, most states do not have a statute that requires that a competent infant witness must understand the obligation of an oath.

> "It should be noted that the common 10-year statute does not refer to the obligation of an oath." 81 A.L.R. 2d supra at 405.

Cases arising in jurisdictions not having this express statutory requirement must be distinguished from the case at bar, for, absent this statute, the courts would admittedly be free to judicially establish their own tests for determining the competency of an infant witness. Our legislature has established the test for a witness under ten years of age and, unless there is a compelling justification for not following the statute, this test should be used in the case at bar. In Indiana, because of Ind. Anno. Stat. § 2-1714 (1968 Repl.), the determination for the trial judge, as regards a witness under ten years of age, is not whether the witness is competent generally but rather the narrower question of whether the witness understands the nature and obligation of an oath.

The retribution envisioned by the witness may be physical, legal or divine, but it must be present for the witness to realistically appreciate the obligation to tell the truth which is imposed by the oath. In determining the competency of an infant witness in the first appeal which dealt with the Indiana statute, this court reasoned:

> "Here, the examination of the proposed witness, as it appears in the record, indicates the requisite capacity. True, she is ignorant as to the mode in which false swearing is punished; yet it may be fairly inferred from her statement, that *she comprehends the obligation of an oath, and is satisfied that any deviation from the truth, while under oath, will certainly be followed by an appropriate punishment."* (our emphasis) *Blackwell* v. *The State* (1858), 11 Ind. 196, 198.

All the evidence necessary to support the determination that the prosecutrix understood the nature and obligation of an oath should have been established during the voir dire examination of the witness before determining that the witness was competent to testify on any other matter. *Simpson* v. *The State* (1869), 31 Ind. 90. See also *People* v. *Klein* (1935), 266 N. Y. 188, 194 N. E. 402. To the contrary, in the case at bar, the voir dire examination of the prosecutrix by the court simply amounts to her being asked four different times if she is willing to tell the truth. At no time during the testimony of this five-year-old was it established that *she understood the consequences of not telling the truth while under oath.* Absent any evidence on this necessary question of fact, the determination that the witness understood the nature and *obligation* of an oath cannot be sustained. Her testimony was never stricken from the record, and a conviction which may have been based on this testimony should be reversed.

NOTE.—Reported in 244 N. E. 2d 100.