THOMAS v. STATE OF INDIANA.

[No. 30-723. Filed October 16, 1967. Rehearing denied December 21, 1967.]

*Lewis Davis,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, and *Wilma T. Leach,* Deputy Attorney General, for appellee.

LEWIS, J.—The appellant was charged with First Degree Burglary by affidavit filed in the Marion County Criminal Court. The issues formed by the affidavit and the plea of not guilty by the appellant were determined by a jury and the verdict was guilty.

Thereafter, a petition to file a belated motion for new trial was granted and this appeal prosecuted on the overruling of the belated motion for new trial.

The affidavit, omitting the formal parts, reads as follows:

"BE IT REMEMBERED, That, on this day before me, NOBLE R. PEARCY Prosecuting Attorney of the Nineteenth Judicial Circuit, personally came JOHN RUDD who, being duly sworn, upon his oath says that PHILLIP DEAN THOMAS on or about the 14th day of APRIL, A.D. 1963, at and in the County of Marion in the State of Indiana, did

then and there unlawfully, feloniously and burglariously break and enter into the dwelling house and place of human habitation of RAYFIELD CAMPBELL, then and there situate at 2860 SANGSTER AVENUE, City of Indianapolis, County of Marion, State of Indiana, in which said dwelling house the said RAYFIELD CAMPBELL then lived, with the intent to unlawfully and feloniously take, steal and carry away the goods, chattels and personal property of the said RAYFIELD CAMPBELL then and there being. . . ."

Specifications of error alleged are:

"1. That the verdict of the jury is contrary to law.

"2. That the verdict of the jury is not sustained by sufficient evidence."

Under specification No. 1; that is, that the verdict of the jury is contrary to law, appellant urges that he did not have a fair trial and his Constitutional Rights were impaired because the Trial Court propounded certain questions to one of the witnesses. These questions are as follows:

"Q. Did you handle this transaction yourself?

"A. Yes, sir.

"Q. When somebody age twenty-two and male, five feet eight inches, a hundred and forty pounds walks into your store with one of those things to pawn it, does it ever occur to you that there might be something going on?

"A. Uh, that comes in our minds many times, your Honor, but, uh . . .

"Q. What do you do about it when it comes to your mind.

"A. We ask them for identification, and try, to the best of our ability, to fill out the pawn ticket right, so that if the merchandise has been stolen that the police would be able to apprehend the criminal involved.

"Q. Doesn't it ever enter your mind that probably and obviously it has been stolen?

"A. It's hard to tell, your Honor, 'cause we take in on an average of thirty to thirty-five pieces a day, and every one of them, if we worked under that conclusion

and called a policeman up to find out, we'd be on the phone constantly.

"Q. Yet you make the owner pay you back what you pawned and lent on it?

"A. Uh, we did not make him sir.

"Q. Well, how'd you get the ten dollars from him?

"A. It was, uh, I received—the sewing machine, if I remember right, was taken by the detectives, and we were told to go down to the Property Room to pick it up, and there was ten dollars waiting for us.

"THE COURT: All right."

" 'It is true, a trial court in any case may, within reasonable limits, interrogate a witness if done in a manner that will not improperly influence the jury.' *Rhodes* v. *State* (1930), 202 Ind. 159, 172 N. E. 176. A fair minded judge observing the incompetency of an attorney for the defense would be expected to take more than ordinary care to protect the rights of the accused." *Wilson* v. *State* (1943), 222 Ind. 63, 51 N. E. 2d 848.

The purpose of this discretionary power is to allow the trial judge to step in and aid (a) the jury, or (b) the court (in a trial without a jury), in their fact-finding responsibilities; however, he is to do this in an impartial manner and not to improperly influence the jury with his own contentions.

Although the burden is on the State to prove the defendant guilty beyond a reasonable doubt, the burden of putting on the trial is the litigants' responsibility with the outcome being dependent upon their efforts only being assisted by the Court to prevent a grave injustice.

Our examination of the foregoing questions propounded by the Court and the answers given by the pawnbroker witness does not convince us that the rights of the defendant were prejudiced; in fact, we are impressed with the fact that the Court was being critical of the pawnbroker rather than the defendant. If anything, the Trial Court's criticism of the pawnbroker who was called as a State's witness would perhaps

affect the credibility of the pawnbroker and benefit the defendant rather than harm him.

The fruits of the questioning by the Court of the pawnbroker did not add anything of probative value with reference to the matters covered in the affidavit. The evidence in the case as a whole conclusively established that the goods accepted by the pawnbroker had been stolen and those stolen goods were tied irrevocably with the appellant. We do not believe prejudicial error was committed by the Trial Court in this interrogation. It appears from the entire record that the questioned action of the Court was not harmful to the defendant and did not prevent him from having a fair trial. *Rhodes* v. *State, supra.*

The appellant then further contends that Police Officer Rudd submitted into evidence testimony of appellant's admission concerning other burglaries. A review of the trial procedures at this point will be helpful.

"Q. Now, Officer, did you have any other conversation in addition to what you've already described with the defendant when he was in custody up there in Marion, Indiana?

"A. Yes.

"Q. Tell the Court what else.

"A. He said he'd been involved in about six burglaries.

"Q. And where was that?

"A. In Marion County.

"Q. Okay. Anything else occur at that time, Officer?

"A. He said that he was being held there for a burglary of a house.

"Q. Was that in Marion, Indiana?

"A. That was in Marion, Indiana, Grant County.

"Q. Okay. Now, did you ever have an occasion to see this defendant after that?

"A. Yes.

"Q. And when and where was that, Officer?

"A.  On November the fifteenth, 1963.

"Q  And where did you see him at that time?

"A.  Grant County Jail, Marion, Indiana.

"Q.  And what did you do at that time?

"A.  I returned him to Indianapolis on the warrant that we had filed against him.

"Q.  Did you place him under arrest at that time?

"A.  I did.

"Q.  Now, when you returned to Indianapolis, what did you do back here, sir, if anything?

"A.  We attempted to locate the burglaries that he'd been involved in, and on several occasions we talked to him and we finally came up with about six or eight definite burglaries that—places of business and residences that he could name for us that we could verify the fact that he'd been involved in.

"Q.  Now, Officer, on December twentieth, 1963, did you have any other conversation with the defendant at that time?

"A.  We did.

"Q.  Tell the Court and Jury what that conversation was.

"A.  At that time, he said he wished to get himself straightened up on other burglaries that he had been involved in, and in that office, we have a more complete set of records than what we usually carry in the car, and in searching the files, he gave us an additional statement that same night.

"Q.  Okay. And what did he tell you at that time, Officer?

"A.  At that time, he said other than the burglary that he was charged with that he'd been involved . . .

> "THE COURT: (Interposing) Let's not go into that. Let's stick to this case at hand here."

Thereafter, the appellant, by counsel, moved for a mistrial, claiming irreparable harm had been done him by the foregoing testimony of Officer Rudd. It will be noted that during the whole of the testimony now objected to that the appellant failed to make any objection and the Trial Court itself finally

interrupted and put it at an end. The testimony concerned appellant's description of other burglaries.

The first move on the part of appellant was to seek a mistrial. A mistrial was sought after appellant had sat idly by and failed to make an objection. In *Dull* v. *State* (1962), 242 Ind. 633, 180 N. E. 2d 523, this Court said:

> ". . . A party may not sit idly by and make no objections to matters he might consider prejudicial, awaiting the outcome of a trial, and thereafter raise such question for the first time."

See also *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629, *Kern* v. *Bridwell* (1889), 119 Ind. 226, 21 N. E. 664. Both of these cases are quoted with authority in *Dull* v. *State, supra,* and the whole matter was probably succinctly put by this Court in *Gamble* v. *Lewis, supra,* in this:

> ". . . We cannot permit litigants to gamble on the possibility of a favorable verdict, . . ."

We are not at all convinced that the evidence complained of here may not have been admissible for the purpose of showing motive, intent, and a common scheme of plan embracing the commission of two or more crimes if the crimes are of a similar nature. *Watts* v. *State* (1950), 229 Ind. 80, 95 N. E. 2d 570; *Shneider* v. *State* (1942), 220 Ind. 28, 40 N. E. 2d 322.

The foregoing alleged errors presented by the appellant in the argument section of his brief do not present any ground for reversible error and the judgment, therefore, is affirmed.

Hunter, C. J., Arterburn and Mote, JJ., concur.

Jackson, J., concurs in result.

NOTE.—Reported in 230 N. E. 2d 303.