ANTHONY MAYNARD AND GAIL MAYNARD *v.*
STATE OF INDIANA.

[No. 2-273A39. Filed October 29, 1973. Rehearing denied December 3, 1973. Transfer denied February 1, 1974.]

*Hall Cochrane,* of Indianapolis, for appellants.

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellee.

SULLIVAN, J.—The defendant-appellants Anthony and Gail Maynard here appeal from convictions of second degree burglary and safe burglary following trial by jury.

We affirm.

The record reveals the following facts: At approximately 9:00 P.M. on Saturday, December 19, 1971, Anthony Maynard, in the company of Jesse Fredericks and Sandra Pedigo, drove to the Beech Grove American Legion Post No. 276. Maynard and Pedigo waited in the car while Fredericks entered the Post on the pretext of obtaining a six-pack of beer. While inside Fredericks ascertained that there was no burglar alarm system and that the building contained a safe.

After leaving the three picked up Gail Maynard and Steven Skipworth. Following a discussion these five separated in two cars and returned to the Post at 3:30 or 4:00 A.M. December 20. At this time they unloaded burglary tools, hiding them near the Legion Post when a patrol car was spotted.

The two cars drove around for a while, then returned to the Post. All of the men go out but Mrs. Pedigo remained in her car. The tools were retrieved. Skipworth and Gail Maynard stood watch while Anthony Maynard and Fredericks pried open the rear door. Once entry was gained, Skipworth remained at the rear door while Fredericks took up watch at the front door. The Maynards entered the room where the safe was kept. Although neither Fredericks nor Skipworth

could see the safe at this time, both testified to hearing pounding, prying and screeching noises for about 30 to 45 minutes.

At this point in time, Skipworth warned them that a car was coming down the alley. Those within the building concluded their activities with some haste and departed. The contingent regrouped at a residence and a large amount of money was produced. The cash was divided into four equal shares, and each of the men received between $100 and $150 as their portion of the proceeds. Mrs. Pedigo received about $13.00 for her part in the night's activities.

Testimony on behalf of the State confirmed that the safe containing $538.00 had been securely locked on Saturday night, December 19, and upon investigation Sunday morning, it was discovered that the back door of the Post had been pried, that the safe had been forced open and the money missing.

As nearly as we can decipher from the Maynards' brief, four issues are presented for our review:

1. Did the trial court improperly admit photographic evidence?
2. Were the Maynards denied a fair trial as a result of "deception" by the prosecution as to "deals" made with State's witnesses?
3. Did testimony regarding prior arrests and possession of burglary tools constitute evidentiary harpoons?
4. Was the evidence sufficient to sustain the judgment?

## PHOTOGRAPHIC EVIDENCE WAS PROPERLY ADMITTED

Appellants cite *"Berry v. Smith* (1972), 32 Ind. Dec. 669" (apparently referring to *Berry v. State* (1972), 153 Ind. App. 387, 287 N.E.2d 557) as follows:

". . . it is a well-established rule of law in Indiana that a foundation must be laid connecting the evidence with the defendant before it is admissible. *Graham v. State* (1970), 253 Ind. 525, 255 N.E.2d 252." 287 N.E.2d 562

Apparently Maynards feel that photographic evidence must somehow be connected with a defendant personally before it may be admitted.

However, the rule announced in *Graham* v. *State* is entirely inapplicable to the situation at hand. That case concerned the proof of the chain of possession of narcotics from the time it left Graham's hands until it was tested in the police laboratory. Obviously in such circumstance the prosecution must prove the connection to the defendant in order to establish that the narcotics tested were those obtained from the suspect. No such question arises in the case at bar.

The standards regarding the admission of photographic evidence were enunciated by our Supreme Court in *New* v. *State* (1970), 254 Ind. 307, 310, 259 N.E.2d 696:

"The admission into evidence of a photograph is within the sound discretion of the trial court and the court's action therein will not be disturbed except for an abuse of such discretion. *Randolph* v. *State* (1954), 234 Ind. 57, 122 N.E.2d 860. No such abuse is shown here.

In determining the relevancy of a photograph the court will inquire as to whether or not a witness would be permitted to describe the objects photographed. In *Hawkins* v. *State* (1941), 219 Ind. 116, 37 N.E.2d 79, photographs of the decomposed body of the deceased were held admissible on the grounds that the facts shown in the photographs had been described without objection and that the photographs served to supplement the oral testimony. In holding the photographs admissible the Court said:

'A photograph, proved to be a true representation of the person, place or thing which it purports to represent, is competent evidence of anything, of which it is competent and relevant for a witness to give a verbal description.' 219 Ind. at 127."

Prosecution witnesses stated that the photographs accurately depicted the condition of the Post in the early morning of December 20, 1971. The trial court did not abuse its discretion by allowing the photographs into evidence.

## MAYNARDS FAILED TO ESTABLISH ANY DECEPTION BY THE PROSECUTION WITH RESPECT TO PROMISES, IF ANY, OF FAVORABLE TREATMENT FOR STATE WITNESSES

During the Maynards' trial, Pedigo, Skipworth and Fredericks all testified for the State. Their stories were substantially the same regarding the robbery of the Legion Post as hereinbefore detailed. Maynards allege that the accomplices' testimony was induced by promises of favorable treatment by the State. Such promises, Maynards charge, were falsely denied by all three witnesses and by police officers during the trial. Suppression by the prosecution of such facts allegedly favorable to the defendants, say appellants, denied their opportunity for a fair trial.

In support of their argument, Maynards cite *Giglio* v. *United States* (1972), 405 U. S. 150, 92 S. Ct. 763. While they have properly interpreted *Giglio*, that decision is of no persuasive effect because the evidence adduced in the trial court below does not equate with the factual situation present in *Giglio*.

In *Giglio*, an assistant United States Attorney promised an accomplice that he would not be prosecuted if he testified for the government before the grand jury and at trial. When the accomplice testified at trial that no such agreement had been made, a different assistant U. S. Attorney allowed the statement to stand uncorrected.

The government submitted an affidavit confirming that the first assistant had made the "deal" with the accomplice. The Supreme Court held that knowledge of the deal was imputed to the entire prosecutor's office, and that allowing the "known" false evidence to go uncorrected, where the evidence was material and had some likelihood of changing the jury's verdict, was a denial of due process requiring a new trial.

Maynards failed to prove that the prosecution here had knowledge of any "deals" made. They further failed to establish that the "deals" had, in fact, been made.

Maynards center their argument primarily upon a letter which was an exhibit to their Belated Motion to Correct Errors. This letter purportedly was written by Indianapolis Police Officers concerning the parole status of Jesse Fredericks. Neither the letter nor the supporting memorandum is a sworn document. There are no supporting affidavits to show that the letter is genuine or its contents true. Trial Rule 59(D) requires in part that:

> "When a motion to correct errors is based upon evidence outside the record, the cause must be sustained by affidavits showing the truth thereof served with the motion."

No such affidavit is present here. The letter is therefore dehors the record and could not be considered either by the trial court or upon appeal.

Skipworth testified that he was awaiting trial after being indicted in connection with the Legion Post burglary. At the time of Maynards' trial he was free upon a reduced bond. Skipworth stated that no promises had been made to him.

Sandra Pedigo testified that prior to the trial, a portion of a sentence she had received for reckless driving had been suspended, but that the detectives had made no promises in return for her agreement to testify.

Indianapolis Police Officer Lowell Jones testified that no "deals" had been made with Skipworth, Fredericks or Pedigo. Jones was present at Skipworth's bond reduction hearing and stated that the bond had been reduced by a Municipal Court Judge after evidence was introduced that Skipworth had never failed to appear after being released on bond and had cooperated with the State.

The facts before us were fully disclosed during the trial. From those facts the jury as trier of the facts could have con-

cluded that no "deal" had been made, or that if a deal was made that it did not affect the particular witnesses' credibility. Promises of leniency do not render an accomplice incompetent, they only affect his credibility and the weight of his testimony as determined by the trier of facts. *Mattingly* v. *State* (1957), 236 Ind. 632, 142 N.E.2d 607.

Even if we were to assume that more concrete evidence of promises of leniency existed, all evidence indicates that "deals" or promises if any were made by the Police Department and not by the Prosecutor.

The present case thus differs from *Giglio* in the following respects: (1) there was no conclusive evidence that a "deal" was made; (2) there was no "deception", i.e., even assuming the fact of such a "deal", evidence thereof, in the form of Detective Jones' testimony concerning Skipworth's bond reduction and to the effect that Fredericks, having made a "clean-up" statement concerning a series of burglaries, had been told that he possibly would not be prosecuted upon certain charges, was before the jury for evaluation as to Skipworth's and Fredericks' credibility. *Compare Napue* v. *Illinois* (1959), 360 U. S. 264, 79 S. Ct. 1173.

### THE TESTIMONY CONCERNING PRIOR INDEPENDENT CRIMINAL ACTIVITY WAS NOT PROPERLY OBJECTED TO AND ERROR, IF ANY, IS THEREFORE WAIVED.

During the trial, the State attempted to link the Maynards with the burglar tools used in the Legion Post burglary. Skipworth and Fredericks both testified in that regard:

"Q. Mr. Skipworth, you said something about owning a part of the tools, how was that, how did you own a part?

MR. WHITE: Object to this, Your Honor. I don't believe this is redirect examination.

THE COURT: Overruled. Answer the question.

A. Because we had robbed other places. Sometimes we left the tools behind and we had to buy more.

Q. Did everybody pitch in for those tools?
A. Yes.
Q. Including these two defendants?
A. Yes.
Q. I see. So you often left the tools behind and you had to buy new ones is that it?
A. That's right.
Q. Who generally kept the tools?
A. Maynards.
Q. You had been with them before hadn't you?
A. Yes, I had."

Direct Examination of Jesse Fredericks:

"Q. Had you been out riding with the Maynards before?
A. Yeah, like I said, me and Tony ran around together.
Q. Had you ever pitched in for the purchase of the tools?
A. No.
Q. Had you ever seen tools in the custody or possession of either one or both of these two defendants?
MR. WHITE: Object, Your Honor, he is not relating this to any particular time. I don't know whether he means ten years ago.
THE COURT: Well, you will have opportunity to cross examine. Overruled. Answer the question.
A. Would you repeat that again?
Q. Had you ever seen either one or both of these defendants in possession of those type of tools you talked about?
A. The same tools or the type?
Q. What you characterized as burglar tools?
A. Yes."

It can be seen that neither of these statements was objected to on the grounds that they prejudiced the defendants by introducing evidence of criminal activity independent of that charged in the affidavit. The objection by Mr. White immediately above set forth may infer a question of relevancy but it cannot be said to be sufficiently direct and specific so as to present any question with respect to prior criminal activity. *Holloway* v. *State* (1973), 157 Ind. App. 496, 300 N.E.2d 910; *McGowan* v. *State* (1973), 156 Ind. App. 344, 296 N.E.2d 667. In any event, we find the testimony to be unobjectionable on those grounds.

In *Lawrence* v. *State* (1972), 259 Ind. 306, 286 N.E.2d 830, 832-833 the Court held:

". . . evidence of prior crimes is generally inadmissible in a criminal case because it has no tendency to establish the guilt or innocence of the accused but, if effective at all, could serve only to prejudice or mislead or excite the minds and inflame the passions of the jury. *Rowe* v. *State* (1968), 250 Ind. 547, 237 N.E.2d 576. Evidence of prior crimes is admissible, however, if it is relevant to some issue in the case, such as intent, motive, knowledge, plan, identity, or credibility."

More particularly the Supreme Court of Indiana has ruled that:

"Where the circumstances surrounding the offenses other than that charged are of a similar nature, *showing use of similar or peculiar instrumentalities* in the commission of each offense, or employment of a uniform scheme or method, evidence of such offenses is both relevant and material and is admissible as having probative force to prove the defendant guilty of the particular crime charged." (Emphasis supplied) *Smith* v. *State* (1939), 215 Ind. 629, 635, 21 N.E.2d 709.

Regardless of the extent to which one might infer commission of previous crimes from the testimony concerning the tools, that testimony was admissible as tending to establish a fact material to the crime charged.

Maynards also contend that Fredericks' testimony that he was a co-defendant with Anthony Maynard on a different pending charge constituted an evidentiary harpoon which requires reversal.

Throughout the trial, defense counsel questioned prosecution witnesses as to their arrest records and pending charges, as the following cross examination of Skipworth illustrates:

"Q. How many times have you been arrested and convicted of some criminal offense?
A. Convicted of what?
Q. Any criminal offense?
A. I wasn't convicted of no felony.

Q. No felonies. You have been in on misdemeanors?

A. Yes sir.

Q. What were they?

MR. LEVY: Your Honor, I am going to object.

MR. WILSON: I think we have a right to have his records.

THE COURT: "In on misdemeanors", I don't think that is going to convictions. You have a right to question convictions but "in on" I don't think is quite that precise. I will sustain the objection on that ground.

Q. You are out on how much bond?

A. I don't recall, I had a bond reduction.

Q. You don't know how much you are out on bond?

A. No, I don't.

Q. You are a defendant in this Court?

A. Yes, sir.

Q. And you are coming up later on charges of second degree burglary and safe burglary, is that correct?

A. Yes.

Q. You are a defendant in the cause number CR 71-0867?

A. Yes, sir.

Q. Do you have any other felonies pending?

MR. LEVY: Your Honor, I am going to object to questions in reference to pending things.

MR. WILSON: I asked about felonies.

THE COURT: Are you going to credibility?

MR. WILSON: I think it affects crediblity.

THE COURT: Well, of course, the Supreme Court says no. Objection sustained.

MR. WILSON: That's all.

THE COURT: All right, cross examination, Mr. White."

CROSS EXAMINATION

QUESTIONS BY MR. WHITE, Counsel for Defendant Gail Maynard.

"Q. How old are you, Mr. Skipworth?

A. Twenty.

Q. How many times have you been arrested?

MR. LEVY: Your Honor, I am going to object to that as being improper.

THE COURT: Sustained.

Q. How many times have you been arrested and convicted of a felony?

A. I never have been convicted of a felony.

Q. Have you been in jail?

MR. LEVY: Your honor, I am going to object to this. It is improper cross.
THE COURT: Sustained."

The "evidentiary harpoon" of which Anthony Maynard complains occurred during the prosecutor's re-direct examination of Jesse Fredericks:

"Q. Now I believe you testified that you have a case pending in this Court?
A. Yes, sir.
Q. In response to the Court's question. Was that with a co-defendent, someone else?
A. Yes sir.
Q. With who?
A. Anthony Maynard."

Neither appellant made any objection to the question or answer and the questioning proceeded to other matters.

In *Thomas* v. *State* (1967), 249 Ind. 271, 230 N.E.2d 303, the Supreme Court rejected a similar claim by a defendant who moved for a mistrial after failing to object to evidence of prior burglaries.

The court there stated:

"Thereafter, the appellant, by counsel, moved for a mistrial, claiming irreparable harm had been done him by the foregoing testimony of Officer Rudd. It will be noted that during the whole of the testimony now objected to that the appellant failed to make any objection and the Trial Court itself finally interrupted and put it at an end. The testimony concerned appellant's description of other burglaries.

The first move on the part of appellant was to seek a mistrial. A mistrial was sought after appellant had sat idly by and failed to make an objection. In *Dull* v. *State* (1962), 242 Ind. 633, 180 N.E.2d 523, this Court said:

'. . . A party may not sit idly by and make no objections to matters he might consider prejudicial, awaiting the outcome of a trial, and thereafter raise such question for the first time.'

See also *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N.E.2d 629, *Kern* v. *Bridwell* (1889), 119 Ind. 226, 21 N.E. 664. Both of these cases are quoted with authority in *Dull* v.

*State, supra,* and the whole matter was probably succinctly put by this Court in *Gamble* v. *Lewis, supra,* in this:

'. . . We cannot permit litigants to gamble on the possibility of a favorable verdict, . . .'"
249 Ind. 271 276-277

*See also Hensley* v. *State* (1969) 251 Ind. 633, 244 N.E.2d 225; *Gunder* v. *State* (1968), 250 Ind. 689, 238 N.E.2d 655.

By failing to make timely objection to the testimony by Fredericks, the appellants have waived any error resulting therefrom. We further note that under the criteria for determining the existence of an "evidentiary harpoon" enunciated in *White* v. *State* (1971), 257 Ind. 64, 272 N.E.2d 312, the circumstances of this case do not require reversal.

## THE VERDICT OF THE COURT BELOW WAS SUSTAINED BY SUFFICIENT EVIDENCE

It is fundamental that:

"When reviewing the sufficiency of the evidence, this Court will not weigh the evidence nor determine the credibility of the witnesses. Only that evidence most favorable to the State and the reasonable inferences to be drawn therefrom will be considered. As long as there is substantial evidence of probative value sufficient to establish every material element of the crime beyond a reasonable doubt, the verdict will not be disturbed." *McFarland* v. *State* (1973), 260 Ind. 349, 295 N.E.2d 809.

The trial court was entitled to give greater weight to the testimony of the accomplices than to that of the defense witnesses. While Anthony Maynard's wife stated that he was at home during the burglary, Maynard himself contradicted her version of his alibi. Mrs. Maynard admitted to convictions for "altering a fraud instrument", malicious trespass and a violation of the 1935 Beverage Act. We cannot say that the defense testimony was so compelling as to require disregard for that of the prosecution witnesses. The convictions were fully supported by evidence of probative value.

Judgment affirmed.

Buchanan, P.J., concurs; White, J., concurs in result only.

NOTE.—Reported at 302 N.E.2d 520.